Filed 7/7/16

# IN THE SUPREME COURT OF CALIFORNIA

In re ISAIAH W., A Person Coming )
Under the Juvenile Court Law. )
_____ )
LOS ANGELES COUNTY DEPARTMENT )
OF CHILDREN AND FAMILY )
SERVICES, )
)
         Plaintiff and Respondent, )
)              S221263
         v. )
)        Ct.App. 2/3 B250231
ASHLEE R., )
)         Los Angeles County
         Defendant and Appellant. )     Super. Ct. No. CK91018
_____ )

The federal Indian Child Welfare Act (ICWA) provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) This notice requirement, which is also codified in California law (Welf. & Inst. Code, § 224.2; all undesignated statutory references are to this code), enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding. No foster care placement or termination of parental rights proceeding may be held until at

~ SEE DISSENTING OPINION ~

least 10 days after the tribe receives the required notice. (25 U.S.C. § 1912(a); see § 224.2, subd. (d).)

In this case, a juvenile court removed newborn Isaiah W. from his parents' care and placed him in foster care. In that proceeding, the court concluded there was no reason to know Isaiah was an Indian child. The court thus found ICWA inapplicable and did not order the Los Angeles County Department of Children and Family Services (the Department) to notify any tribe or the federal Bureau of Indian Affairs (BIA). Isaiah's mother, defendant Ashlee R., did not appeal from this order placing Isaiah in foster care. More than a year later, the juvenile court terminated Ashlee's parental rights. Ashlee appealed from that order, citing the court's failure to order the Department to comply with ICWA's notice requirements. We granted review to decide whether a parent who does not bring a timely appeal from a juvenile court order that subsumes a finding of ICWA's inapplicability may challenge such a finding in the course of appealing from a subsequent order terminating parental rights. Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, we hold that the parent may a challenge a finding of ICWA's inapplicability in an appeal from the subsequent order, even if she did not raise such a challenge in an appeal from the initial order.

## I.

Isaiah was born in November 2011, with a positive toxicology for marijuana, and he showed signs of withdrawal. The Department filed a petition in juvenile court pursuant to section 300, subdivision (b), alleging that parental drug use placed Isaiah at risk of harm. At a hearing on December 8, 2011, the court removed Isaiah from his parents' care and granted temporary custody to the Department. The court also ordered reunification services, drug rehabilitation, and counseling for Isaiah's parents. During the hearing, Ashlee told the court she may

2

have American Indian ancestry. The court concluded it had no reason to know that Isaiah was an Indian child but ordered the Department to investigate Ashlee's claims.

On January 20, 2012, the juvenile court held a jurisdictional and dispositional hearing. The court placed Isaiah in foster care and again ordered the Department to offer reunification services to Isaiah's parents, including monitored visitation and substance abuse treatment. At this hearing, the court reviewed an ICWA report prepared by the Department indicating that Isaiah's grandfather may have had Blackfeet ancestry and his great-great-grandmother may have been a member of a Cherokee tribe. The court concluded that "any possibility [that Isaiah is an Indian child] is really too attenuated and remote for it to suggest to this court or . . . for this court to know that the child would fall under the Indian Child Welfare Act." Accordingly, the court did not order the Department to provide notice to any tribe or to the BIA. Ashlee did not appeal from this order placing Isaiah in foster care or otherwise object to the court's finding that ICWA was inapplicable.

Over the next several months, Ashlee visited Isaiah weekly. But she did not complete her drug treatment program or attend her scheduled drug tests. As a result, the juvenile court terminated reunification services in September 2012 and set a hearing on the termination of parental rights. The court ordered a permanent placement plan according to which Isaiah would be adopted by his foster mother.

On April 10, 2013, the juvenile court terminated Ashlee's parental rights and again said it had no reason to know that Isaiah was an Indian child. The court cleared Isaiah for permanent and final adoption.

On June 5, 2013, Ashlee appealed from the order terminating her parental rights on the ground that the juvenile court had reason to know Isaiah was an Indian child yet failed to order the Department to comply with ICWA's notice

3

requirements. The Court of Appeal denied relief, explaining: "Mother had the right to appeal the juvenile court's order at the dispositional hearing. She did not do so, and only challenged the court's failure to provide notice under the ICWA approximately one and a half years later which was after the court terminated parental rights. However, the juvenile court's dispositional findings and orders had become final 60 days after the court's announcement of the order. (Cal. Rules of Court, rule 8.406(a)(1).) 'Appellate jurisdiction to review an appealable order is dependent upon a timely notice of appeal. [Citation.]' (*In re Elizabeth G.* (1988) 205 Cal.App.3d 1327, 1331.) 'An appeal from the most recent order entered in a dependency matter may not challenge prior orders for which the statutory time for filing an appeal has passed.' (*In re Pedro N.* (1995) 35 Cal.App.4th 183, 189 [(*Pedro N.*)].) Here, because mother failed to timely appeal from the ICWA finding in the juvenile court's dispositional order, 'she is foreclosed from raising the issue now on appeal from the order terminating her parental rights.' (*Ibid.*; see *In re Elizabeth G.*, *supra*, 205 Cal.App.3d at p. 1331.)" In relying on *Pedro N.*, the Court of Appeal took an approach contrary to *In re B.R.* (2009) 176 Cal.App.4th 773, 779, *Dwayne P. v. Superior Court* (2003) 103 Cal.App.4th 247 (*Dwayne P.*), and *In re Marinna J.* (2001) 90 Cal.App.4th 731 (*Marinna J.*). We granted review to resolve this conflict among the Courts of Appeal.

## II.

Congress enacted ICWA in 1978 in response to "rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." (*Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 32 (*Holyfield*).) ICWA declared that "it is the

4

policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ."  (25 U.S.C. § 1902.)

The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved."  (25 U.S.C. § 1912(a).)  "If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe."  (*Ibid.*)  The "Secretary" refers to the United States Secretary of the Interior (25 U.S.C. § 1903(11)), whose department includes the BIA.

ICWA's notice requirements serve two purposes.  First, they facilitate a determination of whether the child is an Indian child under ICWA.  (25 U.S.C. § 1903(4) [defining Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe"].)  BIA guidelines in effect at the time of Isaiah's placement in foster care "ma[de] clear that the best source of information on whether a particular child is Indian is the tribe itself."  (U.S. Dept. of the Interior, BIA, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67586 (Nov. 26, 1979); see U.S. Dept. of the Interior, BIA, Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed.Reg. 10146, 10153 (Feb. 25, 2015) ["Only the Indian tribe(s) . . . may make the determination whether the child" is an Indian child under ICWA].)

5

Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child.  (See 25 U.S.C. § 1911(c) ["In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, . . . the Indian child's tribe shall have a right to intervene at any point in the proceeding."]; 25 U.S.C. § 1911(a) ["An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law."].)  "No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe . . . ."  (25 U.S.C. § 1912(a).)  In enacting these provisions, "Congress was concerned not solely about the interests of Indian children and families, but also about the impact on the tribes themselves of the large numbers of Indian children adopted by non-Indians."  (*Holyfield*, *supra*, 490 U.S. at p. 49; see *id.* at p. 52 [ICWA " 'recognizes that the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents' "].)

In 2006, our Legislature enacted provisions that affirm ICWA's purposes (§ 224, subd. (a)) and mandate compliance with ICWA "[i]n all Indian child custody proceedings" (*id.*, subd. (b)).  Section 224.2 codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the BIA.  In addition to requiring notice to the BIA "to the extent required by federal law," the statute requires any notice sent to a child's parents, Indian custodians, or tribe to "also be sent directly to the Secretary of the Interior" unless the Secretary has waived notice in writing. (§ 224.2, subd. (a)(4).)  Section 224.3, subdivision (e)(1) provides that an Indian tribe's determination of a child's membership or eligibility for membership in the

6

tribe "shall be conclusive," and subdivision (e)(2) says that a determination by the BIA of tribal membership or eligibility for membership "is conclusive" in the absence of a contrary determination by the tribe. Section 224.4 affirms that "[t]he Indian child's tribe and Indian custodian have the right to intervene at any point in an Indian child custody proceeding." And importantly for our purposes, section 224.3, subdivision (a) (section 224.3(a)) provides that courts and county welfare departments "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings and in any judicial wardship proceedings if the child is at risk of entering foster care or is in foster care."

The question before us is not whether the juvenile court erroneously concluded from the record that it had no reason to know Isaiah was an Indian child. We express no view on that determination. Moreover, the Department does not contend that Ashlee's failure to object to the juvenile court's finding of ICWA's inapplicability at the April 2013 proceeding to terminate her parental rights precludes her from raising the issue for the first time in this appeal. (See *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1267–1268 (*Samuel P.*) [failure to raise ICWA notice error at juvenile court hearing does not waive the claim for purposes of appeal from an order issued at that hearing]; *Marinna J.*, *supra*, 90 Cal.App.4th at p. 733 [same].) The issue presented here is whether Ashlee — having brought no timely challenge to the January 2012 foster care placement order, which subsumed a finding by the juvenile court that ICWA notice was unnecessary — may now challenge the April 2013 order terminating her parental rights on the ground that the juvenile court erred in finding ICWA notice unnecessary. This question requires us to interpret the federal and California statutes governing ICWA's applicability to dependency proceedings, and we apply independent review. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840.)

7

The Court of Appeal was correct to observe that under rule 8.406(a)(1) of the California Rules of Court, the juvenile court's January 2012 order became final 60 days after it was announced. Ashlee did not appeal from that order during the 60-day period. Section 395 provides in relevant part: "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." In *Sara M. v. Superior Court* (2005) 36 Cal.4th 998 (*Sara M.*), we said that " '[a] consequence of section 395 is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order.' [Citation.] An appeal from the most recent order in a dependency matter may not challenge earlier orders for which the time for filing an appeal has passed." (*Id.* at p. 1018.) Under section 395 and *Sara M.*, Ashlee may not challenge the January 2012 dispositional order through an appeal from the April 2013 order terminating her parental rights.

But it does not follow, as the Court of Appeal believed, that "because [Ashlee] failed to timely appeal from the ICWA finding in the juvenile court's dispositional order, 'she is foreclosed from raising the issue now on appeal from the order terminating her parental rights.' " The reason is that the juvenile court had a *continuing* duty to inquire whether Isaiah was an Indian child in all dependency proceedings, including a proceeding to terminate parental rights. In light of this continuing duty, the April 2013 order terminating Ashlee's parental rights was necessarily premised on a *current* finding by the juvenile court that it had no reason to know Isaiah was an Indian child and thus ICWA notice was not required. Here, the juvenile court made that finding explicit in the course of the April 2013 hearing when it said, "the Court is once again making a finding [that] I have no reason to know the child would fall under the Indian Child Welfare Act." Properly understood, Ashlee's present appeal does not seek to challenge the

juvenile court's finding of ICWA's inapplicability underlying the January 2012 dispositional order.  It instead seeks to challenge the juvenile court's finding of ICWA's inapplicability underlying the April 2013 order terminating her parental rights.  Ashlee's inaction in the face of the earlier order does not preclude her from now claiming in this appeal that the juvenile court erred in finding ICWA notice unnecessary.

The continuing nature of a juvenile court's duty to inquire into a child's Indian status appears on the face of section 224.3(a).  As noted, that provision reads:  "The court . . . ha[s] an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been . . . filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care." (§ 224.3(a).)  The plain language of this provision — declaring an "affirmative and continuing duty" that applies to "all dependency proceedings" — means that the juvenile court in this case had a *present* duty to inquire whether Isaiah was an Indian child at the April 2013 proceeding to terminate Ashlee's parental rights, even though the court had previously found no reason to know Isaiah was an Indian child at the January 2012 proceeding to place Isaiah in foster care.  Because the validity of the April 2013 order is necessarily premised on the juvenile court's fulfillment of that duty, there is nothing improper or untimely about Ashlee's contention in this appeal that the juvenile court erred in discharging that duty.

Reading section 224.3(a) together with section 224.3, subdivision (e)(3) (section 224.3(e)(3)) underscores the continuing nature of the juvenile court's duty.  The latter provision says:  "If proper and adequate notice has been provided pursuant to Section 224.2, and neither a tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, the court may determine that the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et

9

seq.) does not apply to the proceedings, provided that the court shall reverse its determination of the inapplicability of the Indian Child Welfare Act and apply the act prospectively if a tribe or the Bureau of Indian Affairs subsequently confirms that the child is an Indian child." (§ 224.3(e)(3).)

Section 224.3(e)(3) implicitly recognizes that any finding of ICWA's inapplicability before proper and adequate ICWA notice has been given is not conclusive and does not relieve the court of its continuing duty under section 224.3(a) to inquire into a child's Indian status in all dependency proceedings. (See *Dwayne P.*, *supra*, 103 Cal.App.4th at p. 261 ["Because the court's duty continues until proper notice is given, an error in not giving notice is also of a continuing nature and may be challenged at any time during the dependency proceedings."].) Only after proper and adequate notice has been given and neither a tribe nor the BIA has provided a determinative response within 60 days does section 224.3(e)(3) authorize the court to determine that ICWA does not apply. The effect of that determination is to relieve the court of the duty it would otherwise have under section 224.2, subdivision (b) to provide ICWA notice "whenever it is known or there is reason to know that an Indian child is involved, and for every hearing thereafter." Nevertheless, "the court shall reverse its determination of [ICWA's] inapplicability . . . if a tribe or the [BIA] subsequently confirms that the child is an Indian child." (§ 224.3(e)(3); see § 224.3, subd. (f) [notwithstanding a finding of ICWA's inapplicability under § 224.3(e), any information subsequently received by the court, social worker, or probation officer that would be subject to ICWA notice must be provided to any tribes entitled to notice and to the BIA].)

The Court of Appeal observed that at the January 2012 dispositional hearing, "all of the information provided by [Ashlee] and her relatives about their American Indian heritage was before the juvenile court, and the court considered the Department's report on its investigation into mother's heritage." It does not

10

appear that Ashlee submitted any additional information bearing on Isaiah's status between January 2012 and April 2013.  But section 224.3(a), which establishes a juvenile court's "affirmative and continuing duty" to inquire into a child's Indian status, does not contain an exception for situations where no new information is submitted between one proceeding and the next.  Unlike a determination of ICWA's inapplicability that is made *after* "proper and adequate notice has been provided" and "neither a tribe nor the [BIA] has provided a determinative response within 60 days" (§ 224.3(e)(3)), the juvenile court's determination of ICWA's inapplicability at the January 2012 hearing had no effect on its ongoing inquiry and notice obligations under sections 224.2 and 224.3(a).  That is true even though Ashlee did not submit any new information between January 2012 and the April 2013 hearing to terminate her parental rights.

The Department, echoing concerns expressed by the Court of Appeal, contends that ICWA notice issues are best resolved "at the beginning of any dependency proceeding" and that "allowing ICWA issues to be determined in an appeal from a hearing to terminate parental rights encourages the practice of ignoring ICWA violations for years while a dependency case creeps through the proceedings."  Amicus curiae California State Association of Counties similarly contends that "it is in the best interests of the all [*sic*] children to have a child's Indian status determined early in the child proceedings rather than waiting to raise the issue after parental rights have been terminated."  We are mindful of the child's need for a permanent and stable home, and we agree that swift and early resolution of ICWA notice issues is ideal.  But the federal and state statutes were clearly written to protect the integrity and stability of Indian tribes despite the potential for delay in placing a child.  The provisions of the California statute just discussed, as well as others, recognize the importance of properly determining a child's Indian status, even when a dependency proceeding has progressed beyond

11

the initial stages. (See *ante*, at pp. 9–11 [discussing §§ 224.2, subd. (b), 224.3, subds. (a), (e)(3), (f)]; see also § 224.4 ["The Indian child's tribe and Indian custodian have the right to intervene at any point in an Indian child custody proceeding."]; § 224, subd. (b) [requiring judicial compliance with ICWA "[i]n all Indian child custody proceedings"].) The federal statute similarly provides: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." (25 U.S.C. § 1911(c).) ICWA also provides: "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." (25 U.S.C. § 1914.) This latter provision contemplates that ICWA's notice requirements may be enforced *after* the issuance of an order terminating parental rights. Allowing ICWA notice error to be raised for the first time in a direct appeal from an order terminating parental rights seems unlikely to cause greater delay than allowing the parent to litigate the same issue in a separate and collateral proceeding.

In construing statutes, we consider " 'the context of the statute as a whole and the overall statutory scheme . . . .' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) The provisions above, considered as a whole, make clear that Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children. (See *Holyfield*, *supra*, 490 U.S. at

12

pp. 49, 52.) ICWA's notice requirements are "intended to protect the interests of Indian children and tribes despite the parents' inaction." (*Dwayne P.*, *supra*, 103 Cal.App.4th at p. 261; see *Samuel P.*, *supra*, 99 Cal.App.4th at p. 1267 ["The notice requirements serve the interests of the Indian tribes 'irrespective of the position of the parents' and cannot be waived by the parent."].) We agree with the majority view among the Courts of Appeal that "given the court's continuing duty throughout the dependency proceedings to ensure the requisite notice is given [citation], and the protections the ICWA affords Indian children and tribes, the parents' inaction does not constitute a waiver or otherwise preclude appellate review." (*Dwayne P.*, at p. 251; accord, *In re B.R.*, *supra*, 176 Cal.App.4th at p. 779; *Marinna J.*, *supra*, 90 Cal.App.4th at p. 737.)

In reaching a contrary holding, the Court of Appeal, relying on *Pedro N.*, said, "we are only addressing the rights of [Ashlee], not the rights of a tribe under the ICWA." *Pedro N.* reasoned that whereas ICWA authorizes a tribe to intervene in a dependency action "at any point in the proceeding" (25 U.S.C. § 1911(c)), it authorizes parents to "petition any court of competent jurisdiction to invalidate" a dependency action (25 U.S.C. § 1914) but does not expressly permit a parent to allege an ICWA violation at any point in the proceeding. (*Pedro N.*, *supra*, 35 Cal.App.4th at p. 190.) As other authorities have observed, however, "the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is pending." (*In re Junious M.* (1983) 144 Cal.App.3d 786, 790–791; see *Samuel P.*, *supra*, 99 Cal.App.4th at p. 1267 ["If a tribe which may have an interest in a proceeding does not have notice of that proceeding, the tribe will be unable to assert its rights under the ICWA."]; *Marinna J.*, *supra*, 90 Cal.App.4th at p. 739 ["As a result [of lack of notice to relevant tribes], it is unlikely that those tribes had notice of the dependency proceeding, and thus virtually certain that they were unable to assert their rights

13

under [ICWA]."].) As a practical matter, the approach taken by *Pedro N.* makes the statutory right of Indian tribes to intervene "at any point in the proceeding" (25 U.S.C. § 1911(c); see § 224.4) largely contingent upon a parent's alleging ICWA notice error at the earliest possible opportunity in a dependency action. Such an approach cannot be reconciled with the statutory scheme, and we hereby disapprove *In re Pedro N.*, *supra*, 35 Cal.App.4th 183.

The Court of Appeal also said, "The principles enunciated in [*In re X.V.* (2005) 132 Cal.App.4th 794] support our conclusion that a dependent child's interest in permanency and stability requires that there be a time limit to a parent's right to raise the issue of ICWA compliance." But *In re X.V.* is distinguishable. There the Court of Appeal, relying on *Dwayne P.*, granted the parents' first appeal challenging ICWA notice violations and ordered the juvenile court to conditionally reverse its order terminating parental rights and to provide ICWA notice. (*In re X.V.*, at p. 798.) The juvenile court gave notice to several tribes and, after receiving responses, concluded at a special hearing that ICWA did not apply. The parents did not attend the special hearing, and their counsel raised no objection to the court's ICWA findings. (*In re X.V.*, at pp. 799–800.) The parents then appealed again, citing ICWA notice irregularities. Dismissing the appeal, the Court of Appeal said: "We do not believe Congress anticipated or intended to require successive or serial appeals challenging ICWA notices for the first time on appeal." (*Id.* at p. 804.) Because the case before us does not involve a second or successive appeal, we have no occasion here to decide whether a parent would be precluded from raising an ICWA notice violation in a second or successive appeal.

In sum, a juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status. (§ 224.3(a).) If a court determines it has reason to know a child is an Indian child, the court must notify the BIA and any relevant tribe so that the tribe may determine the child's

14

status and decide whether to intervene. (§ 224.2.) If adequate and proper notice has been given, and if neither the BIA nor any tribe provides a determinative response within 60 days, then the court may determine that ICWA does not apply to the proceedings. (§ 224.3(e)(3).) At that point, the court is relieved of its duties of inquiry and notice (§ 224.2, subd. (b)), unless the BIA or a tribe subsequently confirms that the child is an Indian child (§ 224.3(e)(3)). Although the juvenile court in this case found ICWA inapplicable at the January 2012 dispositional hearing, the court had an affirmative and continuing duty to determine ICWA's applicability at the April 2013 hearing to terminate Ashlee's parental rights. The court's April 2013 termination order necessarily subsumed a present determination of ICWA's inapplicability, and Ashlee brought a timely appeal from the April 2013 order challenging that determination. The fact that Ashlee did not allege ICWA notice error in an appeal from the January 2012 dispositional order does not preclude her from raising the claim in this appeal.

Notwithstanding our holding today, we emphasize that social services departments and juvenile courts should inquire about a child's Indian status early in the proceedings and should provide notice at the soonest possible opportunity. Notice must be provided "where the court knows or has reason to know that an Indian child is involved" (25 U.S.C. § 1912(a)), and section 224.3, subdivision (b) sets forth a nonexhaustive list of "circumstances that may provide reason to know the child is an Indian child." Importantly, "[t]he relevant question is not whether the evidence . . . supports a finding that the minor[] [is an] Indian child[]; it is whether the evidence triggers the notice requirement of ICWA so that the tribes themselves may make that determination." (*In re D.C.* (2015) 243 Cal.App.4th 41, 63.) After proper notice has been given, if the tribes respond that the minor is not a member or not eligible for membership, or if neither the BIA nor any tribe

15

provides a determinative response within 60 days, then the court may find that ICWA does not apply to the proceedings. At that point, the court is relieved of its duties of inquiry and notice unless the BIA or a tribe subsequently confirms that the child is an Indian child. " 'To maintain stability in placements of children in juvenile proceedings, it is preferable to err on the side of giving notice and examining thoroughly whether the juvenile is an Indian child.' [Citations.]" (*In re D.C.*, at p. 63.)

## CONCLUSION

For the reasons above, we reverse the judgment of the Court of Appeal and remand for further proceedings not inconsistent with this opinion.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

16

**DISSENTING OPINION BY CHIN, J.**

I agree with the Court of Appeal in this case and *In re Pedro N.* (1995) 35 Cal.App.4th 183. As with all child dependency matters, issues concerning the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) should be resolved as early in the process as possible. Permitting a party to delay an appeal that could have been taken earlier does not further the purposes behind the ICWA and can substantially harm the child. Accordingly, and unlike the majority, I would not carve out an exception for ICWA issues to the general California rule in dependency matters requiring an issue to be raised on appeal at the first opportunity.

Mother Ashlee R. could have, and should have, raised the issue under the ICWA by appeal after the January 2012 jurisdictional and dispositional hearing, but she did not do so. In child dependency cases, it is settled in California that a parent must appeal an issue at the earliest opportunity or forfeit the right to raise the issue later. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1018.) The reason for this rule is compelling. It is necessary to fulfill the state's role as *parens patriae* to protect and care for children who cannot protect and care for themselves. "Childhood is fleeting and '[i]t is axiomatic, of course, that the longer children remain in foster homes, the more difficult it is to find families willing to adopt them.' " (*In re Heather B.* (1992) 9 Cal.App.4th 535, 558, quoting *In re Laura F.* (1983) 33 Cal.3d 826, 837, fn. 10.) " 'Permitting a parent to raise issues

going to the validity of a final earlier appealable order would directly undermine dominant concerns of finality and reasonable expedition,' including 'the predominant interest of the child and state . . . .' " (*Sara M.*, at p. 1018, quoting *In re Janee J.* (1999) 74 Cal.App.4th 198, 207.)

In various contexts, this court has explained and emphasized the critical importance of reasonably prompt resolution of a child's placement, especially after reunification efforts have failed, as they have in this case. "After reunification efforts have failed, it is not only important to seek an appropriate permanent solution — usually adoption when possible — it is also important to *implement* that solution reasonably promptly to minimize the time during which the child is in legal limbo. A child has a compelling right to a stable, permanent placement that allows a caretaker to make a full emotional commitment to the child. [Citation.] Courts should strive to give the child this stable, permanent placement, and this full emotional commitment, as promptly as reasonably possible consistent with protecting the parties' rights and making a reasoned decision." (*In re Celine R.* (2003) 31 Cal.4th 45, 59.) After reunification efforts have failed, " ' "[t]he overriding concern . . . is to provide a stable, permanent home in which a child can develop a lasting emotional attachment to his or her caretakers." ' " (*In re Jasmon O.* (1994) 8 Cal.4th 398, 421.) "Because these proceedings involve the well-being of children, considerations such as permanency and stability are of paramount importance." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) "[L]engthy and unnecessary delay in providing permanency for children [is] the very evil the Legislature intended to correct." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) Once reunification efforts have failed, "it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 256.)

This is not just the courts' view. It is the Legislature's. "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (Welf. & Inst. Code, § 352, subd. (a); see *In re Marilyn H.*, *supra*, 5 Cal.4th at p. 308.)

These abstract policy concerns become concrete in this case. If mother had appealed the ICWA issue in January 2102, as she should have, the appeal could have been resolved before the April 2013 hearing at which the court terminated mother's parental rights and cleared Isaiah W. for final adoption. In that event, the court could have considered any questions under the ICWA, including any tribe's position, and considered all of the alternatives *at that time*. If there were no ICWA issue, Isaiah could have been finally adopted when he was a year and a half old, and he could then have received and given a full, permanent emotional commitment. Instead, mother waited another year and a half. Isaiah is now four and a half years old, and he is still in legal limbo and still awaiting final adoption and the full emotional commitment that goes with it. Under the majority's holding, the wait for Isaiah and many other dependent children will be much longer than if we require the ICWA issue to be appealed at the earliest opportunity.

Isaiah is paying a high price, and other children will continue to pay a high price, due to the majority's permitting mother to make this delayed ICWA claim. The delay "may not seem a long period of time to an adult, [but] it can be a lifetime to a young child. Childhood does not wait for the parent to become adequate." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 310.) Nor does childhood wait for the appellate process.

3

California law provides ample opportunity to raise and litigate issues under the ICWA. (Maj. opn., *ante*, at pp. 6-7; see *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1538-1539.) The trial court here investigated and made a prompt ruling, and, as noted, mother could have appealed that ruling when it was made. The majority cites nothing in the ICWA suggesting Congress wanted to prohibit a state from imposing reasonable time limits within which a parent may appeal ICWA issues. Rather, as the Court of Appeal here noted, " 'Congress's intent to not cause unnecessary delay in dependency proceedings is evidenced by the [ICWA] provision allowing a hearing on the termination of parental rights within a relatively short time, 10 days, after the [Secretary of the Interior] or tribe receives ICWA notice. (25 U.S.C. § 1912(a).)' " (Quoting *In re X.V.* (2005) 132 Cal.App.4th 794, 804.) Another provision of the ICWA allows an aggrieved party, including an Indian tribe, to "petition any court of *competent jurisdiction*" to invalidate an action that violated specified parts of the ICWA. (25 U.S.C. § 1914, italics added.) The reference to competent jurisdiction shows Congress meant the ICWA to fit in with state procedures.

Additionally, as the *Pedro N.* court noted, "[h]ad the Congress intended to permit a parent to allege an ICWA violation at any point in the proceedings, it could well have so stated. Indeed, in another portion of the ICWA (25 U.S.C. § 1911(c)), the Congress conferred the right to intervene in any dependency or termination action 'at any point in the proceeding.' [Citation.] We assume from the absence of such language in 25 United States Code section 1914, that the Congress did not intend to preempt, in the case of appellate review, state law requiring timely notices of appeal from a parent who appeared in the underlying proceedings and who had knowledge of the applicability of the ICWA." (*In re Pedro N.*, *supra*, 35 Cal.App.4th at p. 190.) Requiring the appeal to be made in a timely fashion violates nothing in the language or spirit of the ICWA.

4

Indeed, prompt resolution of ICWA issues *furthers* the act's purposes and the interests of the tribe involved. The purpose behind requiring notice and permitting the tribe to intervene is to allow the court to consider a placement consistent with the ICWA such as, potentially, a placement within the tribe. This purpose is important. But, to fully effectuate this purpose, the juvenile court should consider such an alternative placement *as soon as possible*, not belatedly. Requiring the parent to appeal the ruling when made would generally permit the court to consider the tribe's interests at the same time it considers other possible placements.

Here, if mother had appealed the ICWA issue in January 2012, and if it was then determined that Isaiah was an Indian child and the tribe was notified, the tribe could have urged its interests at the April 2013 hearing, and the court could have decided what to do at that time, when Isaiah was merely a year and a half old. Instead, permitting mother to belatedly raise the issue much later will mean that Isaiah will be at least five or six years old when any tribe is notified. In that event, the tribe would be placed in the difficult position of having to urge that a child be removed from a long-standing foster care relationship — often a relationship that promises to become permanent through adoption — and placed within a tribe with individuals with whom the child has no emotional connection. A tribe should not be placed in that position.

We have noted "evidence that the child will suffer long-term, serious emotional damage if a bond with foster parents is severed." (*In re Jasmon O.*, *supra*, 8 Cal.4th at p. 421.) As the Court of Appeal here emphasized, "in California, the courts have held that" a child's constitutional interest in stability "includes the 'right to a reasonably directed early life, unmarred by unnecessary and excessive shifts in custody.' " (Quoting *In re Arturo A.* (1992) 8 Cal.App.4th 229, 241, fn. 6.) As the Court of Appeal also stated, we should not adopt a rule

5

"that there is no time limit on a parent's right to raise the issue of ICWA compliance. To allow a parent unlimited time within which to raise this challenge would violate the child's constitutional right to a stable and permanent home."

The majority stresses that the court's duty under the ICWA is a continuing one. I agree. Whenever the court receives reason to believe the child is, or might be, an Indian child, it must act accordingly. But the continuing duty does not mean the court must continually investigate, week after week, year after year, whether the child might be an Indian child. Here, the court investigated the question at the outset, and made its ruling in January 2012. Mother could have challenged the ruling at that time. No one suggests anything new occurred after that date to trigger a duty of further investigation or notification. If, after the January 2012 hearing, something had happened to necessitate action under the ICWA, I agree that mother could have challenged any subsequent ruling or failure to act after that something had occurred. In that situation, mother could *not* have challenged in January 2012 the court's *later* action or inaction. But here, all of mother's arguments are based on the information and record as it existed in January 2012. Mother could have made those arguments at that time.

I agree with the majority that parents may not waive a tribe's rights. We have no occasion to decide a tribe's rights if and when it receives notice belatedly and had no previous opportunity to intervene. But parents may waive their own rights to appeal an ICWA issue. Mother had no obligation *ever* to appeal on this ground. Certainly, if a tribe is not given notification, and a parent does not raise this issue on appeal, the tribe is not likely to learn that a potential Indian child is involved in the dependency proceeding. But this circumstance is not due to California's appellate time limits. Neither the ICWA nor our state statutes require notification of all possible tribes of all dependency matters, and the tribes no doubt would not want to be inundated by such notifications. Because nothing compels a

6

parent ever to raise an ICWA issue, condoning the belated raising of such an issue — thus depriving a tribe of the ability to intervene in a timely fashion — will not itself guarantee the tribe will receive the notice to which it is entitled. It will merely encourage unnecessary delay — delay that can harm the child.

The majority appropriately — but toothlessly — emphasizes that tribes should receive notice under the ICWA "at the soonest possible opportunity." (Maj. opn., *ante*, at p. 15.) Requiring a parent to appeal an ICWA issue at the soonest possible opportunity furthers this policy. Allowing a parent to delay the appeal harms this policy. Accordingly, I dissent.

**CHIN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Isaiah W.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 228 Cal.App.4th 981
**Rehearing Granted**

_____

**Opinion No.** S221263
**Date Filed:** July 7, 2016

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Jacquie H. Lewis, Commissioner

_____

**Counsel:**

Pattie L. Dikes, under appointment by the Supreme Court, for Defendant and Appellant.

Mark Radoff, Delia Parr and Mark Vezzola for California Indian Legal Services as Amicus Curiae on behalf of Defendant and Appellant.

John C. Cruden, Assistant Attorney General, Amber Blaha, Joann Kintz and Christine E. Ennis for The United States as Amicus Curiae on behalf of Defendant and Appellant.

John F. Krattli and Mark J. Saladino, County Counsel, James M. Owens and Dawyn R. Harrison, Assistant County Counsel, Tracey F. Dodds, Principal Deputy County Counsel, and Stephen D. Watson, Deputy County Counsel, Plaintiff and Respondent.

Jennifer B. Henning; Thomas E. Montgomery, County Counsel (San Diego), John E. Phillips, Chief Deputy County Counsel, and L. David Casey, Deputy County Counsel, for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Pattie L. Dikes
9116 E. Sprague Avenue, #473
Spokane Valley, WN  99206
(619) 559-2557

Mark Radoff
California Indian Legal Services
609 South Escondido Boulevard
Escondido, CA  92025
(760) 746-8941

Tracey F. Dodds
Principal Deputy County Counsel
201 Centre Plaza Drive, Suite 1
Monterey Park, CA  91754-2142
(323) 526-6273

L. David Casey
Deputy County Counsel
4955 Mercury Street
San Diego, CA  92111-1703
(858) 492-2500