Filed 1/25/24  In re Avery L. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re AVERY L., <br><br> a Person Coming Under the Juvenile Court Law. | B327700 <br><br> (Los Angeles County <br> Super. Ct. No. 21CCJP02686) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> S. L., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed.

Jamie A. Moran, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

S.L. (mother) appeals from the juvenile court's order terminating parental rights (Welf. & Inst. Code, § 366.26)[1] over her child Avery L. (born May 2021). Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the "initial duty to inquire" under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California statutes (§ 224 et seq.). We agree with mother that DCFS failed to conduct a proper initial inquiry into Avery's Indian ancestry by not interviewing certain extended family members. We conclude, however, that DCFS's error was harmless. Accordingly, we affirm.

The parties are familiar with the facts and procedural history of the case, so we do not restate those details in full here. Below, we discuss only the facts and procedural history germane to the issue on appeal.

## DISCUSSION

A. *Applicable Law and Standard of Review*

ICWA[2] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family." (*In re Austin* J. (2020) 47 Cal.App.5th 870, 881.) Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    Our state Legislature incorporated ICWA's requirements into California statutory law in 2006. (*In re Abbigail A*. (2016) 1 Cal.5th 83, 91.)

under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903(4); § 224.1, subds. (a) and (b) [incorporating federal definitions].)[3]

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.)  This continuing duty can be divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.  The phase at issue here is the initial duty to inquire.

The duty to inquire whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that triggers DCFS's investigation.  (§ 224.2, subd. (a).)  DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child.  (*Id.*, subd. (b).)  Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has reason to know that the child is an Indian child."  (*Id.,* subd. (c).)  The juvenile court must also require each parent to complete the parental notification of Indian status form (ICWA-020).  (Cal. Rules of Court, rule 5.481(a)(2)(C).)  The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child."  (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

---

[3]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

Here, the juvenile court found ICWA did not apply, stating "[t]he [c]ourt does not have reason to know that [Avery] is an Indian [c]hild, as defined under ICWA." We review the court's ICWA finding for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

B. *Initial Inquiry*

Mother contends DCFS did not fulfill its initial duty to inquire because DCFS did not ask Avery's aunts and uncles whether Avery had Indian ancestry.[4] We agree.

As discussed, section 224.2, subdivision (b) imposes on DCFS a duty of initial inquiry, which includes asking "extended family members" whether the child may be an Indian child. "Extended family members" are defined as the "child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (See 25 U.S.C. § 1903(2) and § 224.1, subd. (c).) Mother and A.J.S. (father)[5] each told DCFS that they had siblings, but there is no evidence DCFS contacted Avery's aunts or uncles about whether Avery may be an Indian child. DCFS concedes that it erred in failing to contact these extended family members. We, therefore, conclude that DCFS did not conduct a proper initial inquiry. Based on our conclusion, we must next determine whether the error was harmless.

---

[4] Mother also contends DCFS should have attempted to locate "other extended family members in Rhode Island," but does not identify any relatives other than the aunts and uncles. (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [ICWA does not require DCFS to "'cast about' for information or pursue unproductive investigative leads"].)

[5] Father is not a party to this appeal.

4

C. *Harmless Error*

"Where, as here, there is no doubt that [DCFS's] inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly. [Citation.] If so, the error is harmless and we should affirm; otherwise, we must send it back for the Department to conduct a more comprehensive inquiry." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777 (*Dezi C.*), review granted Sept. 21, 2022, S275578.)

California appellate courts have crafted several different tests for deciding whether a defective initial inquiry is harmless. (*Dezi C., supra*, 79 Cal.App.th at pp. 777–782.) Unless and until our Supreme Court weighs in on the matter, we will apply the rule set forth in *Dezi C.* Under that standard, "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Id.* at p. 779.) Following *Dezi C.*, we conclude any error in failing to interview extended family members was harmless.

Here, the record does not contain information suggesting a reason to believe that Avery may be an Indian child under ICWA. Rather, mother and father repeatedly denied Indian ancestry. After interviewing mother, DCFS filed the Indian child inquiry form (ICWA-010 form), demonstrating mother had been interviewed about Avery's Indian status and gave DCFS no reason to believe Avery is or may be an Indian child. A month later, mother also

5

signed an ICWA-020 form, indicating she had no known Indian ancestry. Likewise, father filed an ICWA-020 form stating he had no Indian ancestry as far as he knew. The juvenile court also acknowledged receipt of the ICWA-020 forms and found ICWA did not apply. The court ordered the parents to keep DCFS, their counsel, and the court aware of any new information relating to possible ICWA status. There is no evidence that the parents provided new information regarding ICWA status, and mother does not proffer any on appeal.

There is also no indication that the parents would lack knowledge of their family history, as both were raised by their biological parents. (Cf. *Dezi C., supra*, 79 Cal.App.5th at p. 779 [failure to inquire of extended family members may not be harmless if the record indicates that one or both of the parents were adopted and hence their self-reporting of no ancestry may not be fully informed]; see also *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015 [in many cases, a child's parents will be a reliable source for determining whether the child or parent may be a tribal member].)

The extended family members DCFS contacted also denied Indian ancestry. The maternal grandparents and paternal grandfather reported that the family did not have any Indian ancestry within the meaning of ICWA.[6] DCFS also contacted paternal grandmother twice to inquire about Indian ancestry, but she never responded.

---

[6] Maternal grandmother specified that her family did not have "American Indian ancestry," but she believed her family had "*Canadian* [n]ative ancestry." (Italics added.) To the extent mother contends DCFS's failure to contact relatives about Canadian ancestry was prejudicial error, we disagree. Potential *Canadian* native ancestry does not suggest a reason to believe Avery had Indian ancestry within ICWA's scope. (*In re Wanomi P.* (1989) 216 Cal.App.3d 156, 170 [ICWA "accords rights, procedures, and responsibilities only to recognized Indian tribes within the 48 continental

6

There is also nothing in the record to suggest that contacting Avery's aunts and uncles might contradict the unqualified statements by mother, father, and the grandparents that the family did not have Indian ancestry. Presumably, the aunts and uncles who grew up in the same households as mother and father would not have differing information about Indian ancestry.

We also note, despite multiple opportunities to do so over the course of the dependency case, neither parent, nor any interviewed extended family member, suggested that a particular family member who had not been contacted might know more about their ancestry. And mother does not proffer such information on appeal. Thus, we conclude DCFS's failure to comply with its section 224.2, subdivision (b) duty of initial inquiry is harmless error.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.                                    MORI, J.

---

United States"].) Further, maternal grandmother stated any relatives with information about Canadian native ancestry were deceased.

7