Filed 9/12/24  In re C.T. CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re C.T., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. C.T. et al., Defendants and Appellants. | G063701 (Super. Ct. No. 22DP0204) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Joseph Kang, Judge. Affirmed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant C.T.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant L.F.

Leon J. Page, County Counsel, Debbie Torrez and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

\*          \*          \*

C.T. (Father) appeals from the juvenile court's order terminating his parental rights to his son, C.T., Jr.,[1] at a hearing conducted pursuant to Welfare and Institutions Code section 366.26.[2] Father does not challenge the merits of the order. Rather, he contends the Orange County Social Services Agency (the Agency) failed to comply with its duty of initial inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and section 224.2, subdivision (b) (section 224.2(b)), by failing to ask several paternal relatives he had identified to the Agency about Indian heritage.[3] L.F., the biological mother of C.T., Jr. (Mother) filed a joinder in the relief requested by Father.

We affirm. We hold the Agency satisfied its duty of initial inquiry. We agree with *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 (*Robert F.*), that the Agency did not have a duty under section 224.2(b) to inquire of Father's siblings and other extended

---

[1] Father and C.T., Jr., share the same name, so we refer to appellant as Father and the child as C.T., Jr. to avoid confusion.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] We use the term "Indian" solely for the sake of consistency because ICWA and related California statutes use the same term. We occasionally refer to "Native American heritage" in instances where the Agency used the phrase in their reports.

family members regarding Indian heritage because the plain language of that section applies only "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306," (*ibid*.) and does not apply when a child is removed by means of a protective custody warrant pursuant to section 340. C.T., Jr. was taken into custody pursuant to a warrant issued under section 340, not pursuant to section 306.

FACTS AND PROCEDURAL HISTORY[4]

On February 10, 2022, the juvenile court issued a protective custody warrant authorizing the removal of C.T., Jr., an infant, from the custody of Mother and Father. The Agency applied for the protective custody warrant pursuant to section 340 based on safety concerns arising from ongoing domestic violence between Mother and Father and Mother's failure to protect her children. Mother's three other children were already dependents of the court. C.T., Jr. was taken into custody pursuant to the protective custody warrant and initially placed with his maternal grandmother.

On February 15, 2022, the Agency filed a child welfare petition under section 300, subdivision (b)(1) (the petition), alleging, among other things, Mother and Father had exposed C.T., Jr. to domestic violence, Mother violated a court order prohibiting her from allowing Father to have any contact with Mother's other children, Mother had denied the existence of a risk to C.T., Jr., and both Mother and Father had a history of substance abuse that may be unresolved. The petition also alleged C.T., Jr., came

---

[4] Our summary of the facts and procedural history is limited to that relevant to the sole issue on appeal.

3

within section 300, subdivision (j) due to the maternal half-siblings' dependency cases.

Mother and the maternal grandmother denied Indian heritage on or around February 15, 2022. At that point, the social worker had been unable to contact Father to make an initial inquiry. In the Indian Child Inquiry Attachment to the petition (Judicial Council Forms, form ICWA-010(A)), a social worker stated her initial inquiry of Mother "gave [her] no reason to believe the child is or may be an Indian child."

The detention hearing before the juvenile court took place on February 16, 2022. Father filed a Parental Notification of Indian Status (Judicial Council Forms, form ICWA-020) indicating he may have Indian ancestry. Mother also filed her ICWA-020 form, indicating she may be, or was, eligible for membership in a tribe, as was C.T., Jr. At the hearing, the court "heard statements of [F]ather as to issues of American Indian Heritage, possible heritage," ordered the Agency to "continue to investigate possible American Indian Heritage and provide notice to appropriate tribe, as identified, and the Bureau of Indian Affairs," and deferred making an ICWA finding. C.T., Jr. was detained from Mother and Father.

On March 2, 2022, Mother reported to the Agency she did not know if she had Native American heritage, but referred the Agency for more information to the maternal grandfather, who was separated from the maternal grandmother. On the same date, Father reported he may have Native American heritage, but did not know with what tribe, and he did not know who would have more information.

The Agency attempted unsuccessfully to make further contact with Father and Mother on March 22, 2022, to obtain information about the family's claimed Native American heritage. Father's telephone number was

4

out of service, but the Agency received a new number for Father from the paternal grandmother and left a voicemail message for him. On the same date, and again on July 28, 2022, the Agency interviewed the paternal grandmother, who said she was adopted, is Indian, and may be Navajo. She stated she did not speak to her biological family and did not have any further information or contacts who may have more information. The paternal grandfather was deceased. The Agency also interviewed the maternal grandmother on March 22, 2022, who denied Native American heritage. She said her family is from Mexico.

The Agency sent informal ICWA inquiry letters to the Bureau of Indian Affairs (BIA), Navajo Nation, and another tribe, along with a family tree. The Navajo Nation reported the family is not eligible for membership. The other tribe did not respond.

The jurisdiction hearing was held on May 4, 2022. The juvenile court found the petition to be true by a preponderance of the evidence. At a hearing on July 5, 2022, the court ordered the Agency to file an ICWA addendum "addressing all ICWA inquiry efforts that have been undertaken in this case" and to include "[a]ll known family and extended family members."

On July 8, 2022, both the maternal grandmother and maternal grandfather denied Indian heritage. On July 14, 2022, Father reported having no further information regarding Indian heritage. On July 28, 2022, the Agency left a voicemail message for a paternal great-aunt identified by Father as a potential placement option for C.T., Jr.

In connection with its ICWA inquiry, the Agency learned that, in addition to the paternal grandfather being deceased, the paternal great-grandfather was deceased, and no contact information was available for the

5

paternal great-grandmother. The paternal grandmother told the Agency she never had any contact information for the paternal relatives.

The juvenile court continued the disposition hearing multiple times due to ICWA issues and continued to order the Agency to provide an update on ICWA inquiries/status. The Agency was ordered to "re-interview [the] maternal grandfather regarding ICWA and contact any applicable tribe."

On October 12, 2022, the Agency spoke with the maternal grandfather who "acknowledged Native American heritage in his family of origin but did not know the name of the tribe." The maternal grandfather stated the maternal great-grandfather had informed him the maternal great-great-great-grandfather was Native American but he did not know what state he was from. The maternal grandfather clarified the maternal great-great-great-grandfather had changed his last name when he settled in Mexico. He identified Guanajuato, Mexico, as the birthplace for the maternal great-grandfather and maternal great-great-grandfather and stated there was Mexican Indian heritage in his family, they were from Guanajuato, Mexico, but he did not know the name of the tribe. The maternal grandfather repeated he did not have any living relatives with further information. The Agency sent an ICWA inquiry to the BIA's Pacific Regional Office based on the information they obtained from the maternal grandfather.

The next day, the Agency unsuccessfully tried to contact Father and the paternal grandmother to make a further ICWA inquiry.

The Agency sent second inquiries and updated family tree information to the BIA and Navajo Nation tribes on October 14, 2022. The Agency did not receive responses from either the Navajo Nation or the BIA regarding the second inquiry.

6

The disposition hearing took place on October 18, 2022. The juvenile court found ICWA did not apply, but the Agency had an affirmative and continuing duty of inquiry.

In January and February of 2023, the Agency continued to inquire with Father, Mother, the paternal grandmother, and the maternal grandparents concerning Indian ancestry. All denied having Indian heritage. In September, November, and December 2023, three additional paternal relatives, including two individuals identified as paternal aunts, contacted the Agency regarding potentially adopting C.T., Jr. There is nothing in the Agency's records to indicate the Agency inquired of these individuals regarding Indian heritage.

The section 366.26 hearing took place on February 2, 2024. The juvenile court found again that ICWA did not apply. The juvenile court terminated Mother and Father's parental rights and placed C.T., Jr. for adoption. Father and Mother timely appealed.

DISCUSSION

I.

ICWA INQUIRY AND NOTICE REQUIREMENTS

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. [Citations.] Congress enacted ICWA to further the federal policy "'that, where possible, an Indian child should remain in the Indian community . . . .'"'" (*In re W.B.* (2012) 55 Cal.4th 30, 48, fn. omitted.)

Under ICWA, "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to, an Indian child shall

7

notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) "This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding. No foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives the required notice." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5 (*Isaiah W.*).)

"ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child." (*Isaiah W., supra*, 1 Cal.5th at p. 8.) "Section 224.2 codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the BIA." (*Id.*, at p. 9.)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry. [Citation.] [¶] The duty of initial inquiry arises, in part, from federal regulations under ICWA stating that '[s]tate courts must ask each participant in an . . . involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child' and that '[s]tate courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'" (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741, disapproved on other grounds in *In re Dezi C.* (Aug. 19, 2024, S275578) ___ Cal.5th ___ [2024 WL 3853597] (*Dezi C.*).)

8

"State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an 'affirmative and continuing duty to inquire' whether a child in the dependency proceeding 'is or may be an Indian child.' (§ 224.2, subd. (a).) When the agency takes the child into temporary custody, its duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' (§ 224.2, subd. (b).) State law also expressly requires the juvenile court to ask participants who appear before the court about the child's potential Indian status. (§ 224.2, subd. (c).)" (*In re Benjamin M., supra*, 70 Cal.App.5th at pp. 741–742, disapproved on other grounds in *Dezi C, supra,* 2024 WL 3853597; see *Isaiah W., supra*, 1 Cal.5th at p. 9.)

"While this duty of inquiry is sometimes referred to as the initial duty of inquiry, this is a bit of a misnomer, as the duty 'continues throughout the dependency proceedings.'" (*Dezi C., supra,* 2024 WL 3853597 at p. *6.)

"The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678, disapproved on other grounds in *Dezi C, supra*, 2024 WL 3853597.) This case does not concern the duty of further inquiry, which arises only if the court or the department has "reason to believe that an Indian child is involved." (§ 224.2, subd. (e).)

"As these authorities make clear, the primary parties protected under ICWA are the Native American tribes, whose right to intervene in an appropriate case will likely never be discovered absent the statutorily required inquiry and notice procedures. Thus, the law allows a parent to raise failure to comply with ICWA on appeal, even if the issue was not raised

9

in the trial court, because '[t]he parent is in effect acting as a surrogate for the tribe in raising compliance issues on appeal.'" (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.)

"If ICWA is not complied with, "'the dependency proceedings, including an adoption following termination of parental rights, [are] vulnerable to collateral attack if the dependent child is, in fact, an Indian child.""'" (*In re A.R., supra*, 77 Cal.App.5th at pp. 204–205.)

## II.

### THE AGENCY SATISFIED ITS DUTY OF INITIAL INQUIRY

Father and Mother only challenge the Agency's duty of *initial inquiry*; specifically, the Agency's failure to ask Father's potential siblings and other extended family members he identified to the Agency about Indian heritage. The appeal does not concern whether the Agency discharged its duty of further inquiry.

Pursuant to section 224.2(b), "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306 . . . , the county welfare department . . . has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

There is a conflict in the case law on the application of section 224.2(b), and the California Supreme Court has granted review to resolve it. The court in *Robert F., supra,* 90 Cal.App.5th 492, review granted, held the expanded duty of initial inquiry under section 224.2(b)—i.e., asking extended family members and others who have an interest in the child about Indian

10

heritage—applies only if the child was placed into temporary custody without a warrant. (*Robert F.*, at pp. 497, 504; see *In re D.M.* (2024) 101 Cal.App.5th 1016, review granted July 24, 2024, S285537; *In re Andres R.* (2023) 94 Cal.App.5th 828, 842, review granted November 15, 2023, S282054; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677–678, review granted July 26, 2023, S280572.) Other courts have held the duty to interview extended family members and others who have an interest in the child applies in every proceeding where the Agency removes a child from the home. (See, e.g., *In re L.B.* (2023) 98 Cal.App.5th 512; *In re C.L.* (2023) 96 Cal.App.5th 377; *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted September 27, 2023, S281447.)

We agree with the holding in *Robert F.* and the cases that have followed it and, pending guidance from the California Supreme Court, apply it here. The Agency took C.T., Jr. into protective custody under a warrant pursuant to section 340. It did not take him into temporary custody pursuant to section 306. Therefore, the expanded duty of initial inquiry under section 224.2(b) did not apply, and the Agency was not required to ask extended family members about Indian heritage at the initial inquiry stage.[5]

---

[5] Father asserts for the first time in his reply brief that section 224.2(b) violates equal protection if it is interpreted to apply to children placed into custody pursuant to section 306, but not to children removed pursuant to a warrant. Father offered no valid reason why he did not raise this challenge in his opening brief, and we decline to consider it. "'Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.'" (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.)

11

## DISPOSITION

The juvenile court's order terminating Father's and Mother's parental rights is affirmed.


GOODING, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.