Filed 5/11/22  In re Gilbert S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re GILBERT S. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E077538 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J284540 & J284541) |
| v. | OPINION |
| KENDRA V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed with instructions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Steven O'Neill, Interim County Counsel, and Glenn C. Moret, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

In this appeal from the dispositional order in a dependency case, defendant and appellant, Kendra V. (Mother), contends respondent San Bernardino County Children and Family Services (CFS) failed to comply with the duty of initial inquiry imposed by state statutory provisions implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA). We agree and remand for CFS to investigate and report on the potential Indian ancestry of Mother's children.[1]

# II.

## BACKGROUND

On November 13, 2018, Imperial County Department of Social Services (IDSS) filed a dependency petition on behalf of Mother's two children, Isaiah N. (then age 3) and Gilbert S., Jr. (then age 11 months), pursuant to Welfare and Institutions Code section 300, subdivisions (b) and (g). Gilbert S. was the father of Gilbert, Jr., and Paul N. is the father of Isaiah.[2]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code. "In addition, because ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'Indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] Gilbert S. is now deceased, and Paul N. is not a party to this appeal. For clarity, the child Gilbert will be referred to as Gilbert, Jr.

The court sustained the petition and ordered family reunification services for Mother and Paul N. It denied services for Gilbert S. pursuant to section 361.5, subdivision (a), as he was not a statutorily presumed father.

In February 2020, the court transferred the case to San Bernardino County Juvenile Court because Mother had relocated there.

In February 2021, the court returned the children to Mother for a 29-day extended visit and set a contested 18-month review hearing. At the review hearing the next month, the court terminated Paul N.'s reunification services and ordered family maintenance services for Mother.

On June 3, 2021, CFS filed petitions on behalf of both children pursuant to sections 342 and 387 to remove them from Mother due to allegations of improper supervision and exposing the children to domestic violence.

The juvenile court found the allegations in the petitions to be true, removed the children from Mother, terminated reunification services, and set a permanency planning review hearing for February 4, 2022.

III.

ANALYSIS

In this case, the juvenile court did not expressly find that CFS had discharged its duty to inquire whether the children are Indian children. Nonetheless, the court is deemed to have implicitly made this finding given that it had "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . .

3

has been filed, is . . . an Indian child," and it did not order CFS to further investigate the children's status. (§ 224.2, subd. (a); see *In re A.M.* (2020) 47 Cal.App.5th 303, 318, 320 [the juvenile court "implicitly found that ICWA did not apply"].)

Mother contends that the juvenile court's implied finding of ICWA compliance was in error due to failure by CFS and the juvenile court to comply with its duty of initial inquiry under Welfare and Institutions Code provisions implementing ICWA. On this record, we agree with Mother.[3]

### A. *ICWA and Its California Application*

Congress enacted the ICWA in 1978, and our state Legislature incorporated its requirements into California statutory law in 2006.  (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)  "ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court, except in emergencies, must follow before removing an Indian child from his or her family."  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881-882; see 25 U.S.C. § 1902.)

"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.  [Citation.]  Federal regulations implementing ICWA, however, require that state courts 'ask each

---

[3] We note that the January 1, 2019 amendments to section 224.2, subdivision (b), apply in this case because Mother appeals from the juvenile court's July 6, 2021 findings and orders that occurred after the amendments were in force.  (See *In re D.F.* (2020) 55 Cal.App.5th 558, 568, fn. 8 (*D.F.*); see also *In re A.M.*, *supra*, 47 Cal.App.5th at p. 321 [juvenile court had duty to determine whether children were Indian children based on facts and law that existed at time of section 366.26 hearing].)

participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Austin J.*, *supra*, 47 Cal.App.5th at pp. 882-883; see 25 C.F.R. § 23.107(a) (2022).)

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.*, *supra*, 55 Cal.App.5th at p. 566.) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*Ibid.*) The duty to inquire whether a child is an Indian child begins with the initial contact, i.e., when the referring party reports child abuse or neglect that prompts the agency's investigation. (§ 224.2, subd. (a).) The agency's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (§ 224.2, subd. (b).)[4] Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has reason to know that the child is an

---

[4] "Under both ICWA and California law, ' "extended family member[s]" ' include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053; see Cal. Rules of Court, rule 5.481(a)(4)(A).)

Indian child." (§ 224.2, subd. (c).) The juvenile court must also require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).) The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); see § 224.2, subd. (c).)

" '[W]here the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied.' [Citations.] However, 'we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' " (*In re D.F.*, *supra*, 55 Cal.App.5th at p. 565.) Mother, as the appellant, has the burden to show that the evidence was insufficient to support the findings and orders. (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)

B. *The Juvenile Court and CFS Did Not Comply with ICWA's Inquiry Requirements*

Mother contends the agencies, IDSS and CFS, did not conduct an adequate initial ICWA inquiry because they did not ask extended family members whether the children may be Indian children. She argues that the juvenile court and agencies failed in their "initial and continuing inquiry by not inquiring of *all* of appellant mother Kendra V., father Gilbert S., and father Paul N.'s extended families." As the agency

6

that filed the petitions and obtained the removal of the children, CFS is ultimately responsible for properly executing the duty to inquire, and we do not see the fact that IDSS handled the case earlier as affecting our analysis. We address Mother's claim by considering the extended family of each parent.

### 1. Mother's Extended Family

Mother points out that IDSS did not interview the maternal grandmother, Arcelia V., or maternal aunt, Tanya V., who were both identified in the November 9, 2018 detention report. Arcelia V. appeared in court with Mother on November 14, 2018, and the children were then placed with her. Tanya V. was subject to a Resource Family Approval (RFA) assessment for placement by IDSS on November 13, 2018. Nevertheless, the record does not indicate these individuals were questioned about the children's Indian ancestry.

CFS concedes that Arcelia V. should have been asked about Indian ancestry when she appeared in court with Mother. CFS nevertheless minimizes the matter, arguing that Mother denied Indian ancestry on numerous occasions and had "extensive contact with maternal grandmother with no barrier preventing her from obtaining information from maternal grandmother." This does not excuse CFS.

The agency cannot sidestep its statutory mandate by shifting to the parent the duty of inquiry into whether the child may be an Indian child. (See e.g. *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here a parent 'acting as a

7

surrogate for the tribe' [citation]—has no similar obligation."].)  A parent may deny Indian ancestry but an interview with an extended family member nevertheless reveals that ancestry.  (*In re T.G.* (2020) 58 Cal.App.5th 275, 289 ["Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate."]; see *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 ["Nothing in section 224.2, subdivision (b), relieves the Department of its broad duty to seek that information from 'all relevant' individuals [citation] simply because a parent states on the ICWA-020 form, as [mother] stated here, 'I have no Indian ancestry as far as I know.'  Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe.  [Citations.]"].)

CFS also does not dispute that IDSS did not ask Tanya V. about Indian heritage when it had contact with her at the beginning of the case.  CFS nevertheless argues that Mother is wrong to claim that the agency had "substantial contact" with this aunt through performing the RFA assessment.

Whether an agency has "substantial" contact with an extended family member is not the standard governing an inquiry.  Rather, for an initial inquiry, the agency is required only to "inquire" of extended family members whether the child may be an Indian child.  (§ 224.2, subd. (b).)  This does not require "substantial" contact. According to the detention report, the agency knew of Tanya V.'s existence, it had

been in contact with her, and there is no record of an agency asking her about Indian ancestry.

Under the above circumstances, we conclude that CFS failed to fulfill its duty of initial inquiry to inquire of Mother's relatives.[5]

2. *Gilbert S.'s Extended Family*

IDSS initiated RFA assessments on a paternal uncle, Ephraim S., and a paternal aunt Annette L.,[6] on November 9 and 13, 2018. As well, CFS had a phone number for paternal aunt Gloria L. from a form Gilbert S. submitted. However, there is no evidence that IDSS asked these relatives about Indian ancestry.

CFS again justifies the lack of inquiry by arguing that IDSS did not have "substantial contact" with Ephraim S. and Annette L. by its conducting an RFA assessment. As stated earlier, we reject the argument that some level of contact is needed. Additionally, as to Gloria L., CFS finds it significant that Gilbert S. denied Indian ancestry the same day he provided her phone number. Again, Gilbert S.'s

---

[5] Because the failure to inquire of the extended families requires that we reverse, we need not address Mother's further claim that the agency also failed to inquire of the individuals identified in her psychological report. Upon remand, the agency will be required to interview all known extended family members. (§ 224.2, subd. (b).) As used in connection with an Indian child custody proceeding, the terms "extended family member" shall be defined as provided in section 1903 of the federal Indian Child Welfare Act. (§ 224.1, subd. (c).)

[6] Annette L. is listed as a paternal cousin in the reporter's transcript and in the minute order for the November 14, 2018 hearing but as a paternal aunt in the detention report. Either way, she is a paternal "extended family member" as provided in section 1903 of the Indian Child Welfare Act. (§§ 224.2, subd. (b), 224.1, subd. (c); 25 U.S.C. § 1903(2).)

denial of Indian ancestry did not absolve the agency of its obligation to inquire of extended family members whether the child has Indian ancestry. (§ 224.2, subd. (b); *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554 ["That [mother] disclaimed any Indian ancestry at the outset of the dependency proceedings did not end the Department's duty of inquiry, especially where relevant contact and identifying information was readily available. [Citation.]"].)

IDSS knew of Ephraim S.'s and Annette L.'s existence and had been in contact with them before the detention hearing to assess their potential for placement. Annette L. was even present at the November 14, 2018 detention hearing. These family members were not asked about Indian ancestry. Gloria L. was not contacted at all. Therefore, we concur with Mother that the agency failed to fulfill its duty of initial inquiry with respect to Gilbert S.'s relatives.

### 3. *Paul N.'s Extended Family*

Finally, Mother contends that CFS did not contact Paul N.'s current wife, who is Isaiah's stepmother and who appeared in court at the dispositional hearing on July 29, 2019. Mother argues that while the stepmother is not biologically related to Isaiah, she is a person who has an interest in the child and "she may have access to paternal extended family contact information, and she [could] know and be informed about her husband's family's genealogy." Mother also claims that on June 2, 2021, the paternal grandmother, Ms. N., denied that she or the paternal grandfather of the child had any

Indian ancestry; however, the social worker did not speak to the paternal grandfather about this issue.

CFS argues that the stepmother was not an "extended family member" under section 224.2, subdivision (b), and 25 United States Code section 1903(2). CFS then contends that the stepmother was the same individual who was "actively involved in inappropriate conduct at the behest of Mother, yet Mother now seeks to claim error regarding this person as part of an initial inquiry failure." Additionally, respondent relies on Paul N.'s denial of Indian ancestry. These arguments are not persuasive.

An "extended family member" includes a "stepparent." (25 U.S.C. § 1903(2).) Whether the stepmother acted inappropriately has no bearing on the duty of inquiry. The agency's statutory duty of inquiry pursuant to section 224.2, subdivision (b), is not contingent upon the conduct of the person who may have information about the child's Indian ancestry. It also does not matter that Paul N. denied Indian ancestry. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554.)

Additionally, while the paternal grandmother denied Indian ancestry, that does not excuse inquiring of the paternal grandfather. Section 224.2, subdivision (b), clearly envisions interviewing more than one family member, and we believe the language, when read in conjunction with section 224.1, subdivision (c), and United States Code section 1903(2), requires the agency to interview *all* known and reasonably available extended family members. (See e.g. *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554 [mother disclaiming Indian ancestry at the outset of the

11

proceedings did not end agency's duty of inquiry, "especially where relevant contact and identifying information was readily available."].)

Finally, CFS claims that read in conjunction with section 306, which describes agency duties when a child is placed in the agency's temporary custody, section 224.2 requires only that an agency make an initial inquiry "prior to the juvenile court taking jurisdiction," with no duty to inquire of relatives that the agency learns about after that. That is, CFS posits that the initial duty to inquire begins with a child's initial contact "and extends to a child's placement into temporary custody and the first appearance in court of each party." With this reading, CFS contends that the initial inquiry period in this case "appears to involve a period of time prior to when certain relatives are referenced in the record of this case." In contrast, Mother claims that ICWA obligations create "continuing duties throughout the dependency proceedings; initial inquiry does not end after a month-and-a-half." We agree with Mother.

As mentioned previously, section 224.2 sets forth a duty of inquiry that is "affirmative and continuing." (§ 224.2, subd. (a).) While we agree with CFS that the section 224.2 duty of initial inquiry applies when a child is placed into agency custody under section 306, the sections place no end date on that inquiry. CFS's apparent claim that the jurisdictional hearing terminates the duty would mean that the duty could well end before the agency even has a chance to identify, locate, and interview relatives. That hearing must take place within 15 judicial days from the date of the child's detention, (§ 334), yet section 309, subdivision (e)(1), permits the agency 30

12

days to conduct an investigation to identify and locate relatives of a detained child. Instead of this incongruous deadline, we believe that the agency's initial duty of inquiry applies until the agency has properly fulfilled its statutory mandate by "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)

Based upon the foregoing, we conclude that the agencies failed to fulfill their duty of initial inquiry as to the extended family of all three parents in this case.

*C.  A Remand Is Required*

Because the failure here concerned the agencies' duty of initial inquiry, only state law is involved.  Where a violation is of state law, we may not set aside a judgment unless we find that the error was prejudicial.  (Cal. Const., art. VI, § 13; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742.)

As our high court has said, the ICWA-related inquiry and notice procedures "make clear that Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children.  [Citation.]  ICWA's notice requirements are 'intended to protect the interests of Indian children and tribes despite the parents' inaction.'  [Citations.]"  (*In re Isaiah W.* (2016) 1 Cal.5th 1, 13.)  They are "as much about effectuating the rights of Indian tribes as they are about the rights of the litigants already in a dependency case."  (*Benjamin M.*, *supra*, 70 Cal.App.5th at

13

pp. 740-741.)  As such, we must remand "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child."  (*Id.* at p. 744.)

Here, the agencies failed to access such readily obtainable information from the three parents' extended family members, a total of at least seven extended family members discussed above.  (*See Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [reversal was required where CFS failed its duty of inquiry by not asking " 'extended family members,' " such as father's brother and sister-in-law, whether the minor had Indian ancestry on his paternal side because the missing information was readily obtainable and the information the relatives could have given would likely have "shed meaningful light" on whether the child was an Indian child.].)  Even if we do not know how the relatives would respond to the inquiry regarding their Indian status, their knowledge would be suggestive of the parents' status and, thus, bear meaningfully on the required determination about the parents.  (*Id.* at pp. 744-745.)  Because the agencies did not fulfill their duty of "basic inquiry into potentially meaningful, easily acquirable information," substantial evidence does not support the court's implied finding that ICWA did not apply.  (*Id*. at p. 745.)

IV.

DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed with instructions.  The case is remanded to the trial court to comply with Welfare and

14

Institutions Code section 224.2.  The juvenile court shall order that within 30 days of the remittitur, CFS report its investigation of potential Indian ancestry by interviewing available extended family members.  Following the report, the court shall proceed accordingly.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

RAMIREZ
P. J.

MENETREZ
J.

15