Filed 12/6/22; Certified for Publication 1/5/23 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079380 |
| Plaintiff and Respondent, | (Super. Ct. No. RIJ2100014) |
| v. | OPINION |
| C.K. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Cheryl C. Murphy, Michele A. Mathis and Harry (Skip) A. Staley,* Judges. Reversed with directions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant C.K.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant I.B.

*Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Melinda H. Frey, Deputy County Counsel, for Plaintiff and Respondent.

I.

INTRODUCTION

C.K. (Father) and I.B. (Mother) appeal the juvenile court's order terminating their parental rights to their infant child, D.B. They argue the Riverside County Department of Public Social Services (the Department) failed to comply with its duty of initial inquiry into Father's Indian[1] ancestry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) and related California law (ICWA), and thus the juvenile court erroneously found that ICWA did not apply. We agree and find that the error was prejudicial. We therefore conditionally reverse and remand to allow the Department to fully comply with ICWA.

II.

FACTUAL AND PROCEDURAL BACKGROUND[2]

When D.B. was about six weeks old, the Department filed a juvenile dependency petition on his behalf. (See Welf. & Inst. Code, § 300.)[3] The juvenile court ordered D.B.

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[2] We need provide only a brief overview of the facts and proceedings below because we conclude the Department's failure to comply with ICWA as to Father was prejudicial and requires a remand.

[3] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

detained from the parents. The court later sustained the petition, ordered D.B. removed from the parents' care, denied the parents services, and set the matter for a section 366.26 hearing. At that hearing, the juvenile court terminated parental rights to D.B. and freed him for adoption by his prospective adoptive parent, his paternal great uncle. Mother and Father timely appealed.

During the dependency proceedings, the Department took steps to comply with ICWA. The Department attached an ICWA-010 form to its petition stating that both parents denied any Indian ancestry. Shortly afterward, Father submitted an ICWA-020 form denying that he or any family member had Indian ancestry. The Department reported that the paternal great uncle, who eventually became D.B.'s prospective adoptive parent, denied that he or any family member had Indian ancestry.

The Department did not contact any of Father's other relatives to inquire whether they had Indian ancestry. In particular, the Department did not ask the paternal grandmother, who Father lived with and who the Department spoke with several times, whether she had Indian ancestry. D.B.'s counsel also told the juvenile court and the Department at a hearing that she had spoken with the paternal great-grandmother, who expressed interest in D.B.'s placement. Counsel informed the paternal great-grandmother to contact the Department, but nothing in the record suggests she ever spoke with the Department.

In her ICWA-020 form, however, Mother stated that her mother is a member of a Cherokee tribe. The Department thus sent ICWA notices to the Cherokee Nation and

certain Cherokee tribes, but all of them responded that D.B. is not an Indian child and is not eligible for membership in the tribe.

Without any objection, the juvenile court found that ICWA did not apply.

III.

DISCUSSION

Father, with Mother joining, argues the Department failed to comply with ICWA by not asking the paternal grandmother and great-grandmother whether they had Indian ancestry and thus whether D.B. may be an Indian child.[4] They in turn argue that the juvenile court erroneously found that ICWA does not apply before terminating their parental rights. We agree.

We first note that the Department emphasizes the many steps it took to ensure that Mother does not have Indian ancestry when arguing that it fulfilled its ICWA obligations. But the parents do not claim the Department failed to inquire into Mother's background. They challenge only the Department's failure to ask the paternal grandmother and paternal great-grandmother whether they had Indian ancestry. The Department's inquiry into Mother's Indian ancestry sheds no light on the issue and thus does not bear on sufficiency of the Department's inquiry into Father's Indian ancestry. (See *In re Oscar H.* (2022) 84 Cal.App.5th 933 (*Oscar H.*) [declining to discuss sufficiency of ICWA

---

[4] In her joinder notice, Mother also states that she appeals the juvenile court's denial of her section 388 petition. Because Mother has provided no argument on the issue, she has forfeited the argument and we decline to consider it. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

4

inquiry into mother's side because "remand is warranted due to prejudicial error as to the paternal family"].)

The Department and the juvenile court had an "affirmative and continuing duty to inquir[e]" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).) When the Department takes a child into custody, it must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party (the party who reported the abuse or neglect of the child) whether the child is or may be an Indian child. (§ 224.2, subd. (b).) "Extended family members" include the "child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903, subd. (2); § 224.2, subd. (b).)

We agree with the parents that the Department "clearly failed to comply with its . . . duty of initial inquiry [under ICWA] by not asking extended [paternal] family members . . . about possible Indian ancestry." (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916 (*Y.M.*).) For ICWA purposes, the paternal grandmother is an "extended family member," and the paternal great-grandmother is someone with "an interest in the child." (See *In re Dominick D.* (2022) 82 Cal.App.5th 560, 567.) Because both of them were available during the dependency proceedings, the Department should have asked them if they had Indian ancestry and whether D.B. is or may be an Indian child. (See *ibid*.; *Oscar H.*, *supra*, 84 Cal.App.5th at p. 937; § 224.2, subd. (b); *In re Dominick D.*, *supra*, at p. 567.) By failing to do so, the Department failed to discharge its duty of initial

5

inquiry under ICWA and, in turn, the juvenile court erroneously found that ICWA did not apply. (§ 224.2, subd. (b); *Y.M.*, *supra*, at p. 916; *Oscar H.*, *supra*, at p. 937; *In re Dominick D.*, *supra*, at p. 567; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 680 (*Ricky R.*).)

We therefore must conditionally reverse and remand unless the error was harmless. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740.)[5] The Department's failure to comply with ICWA is prejudicial if "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) This "does not require 'proof of an actual outcome (that the parent may actually have Indian heritage).' [Citation.] The missing information need only be relevant to the ICWA inquiry, 'whatever the outcome will be.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 (*Antonio R.*).

Under *Benjamin M.*, the Department's failure to inquire into the paternal grandmother and great-grandmother's potential Indian ancestry was prejudicial. No one disputes that the Department could have contacted them to ask whether they had Indian ancestry or whether they had reason to believe D.B. does. Their responses would "'shed meaningful light on whether there is reason to believe' that [D.B. is an Indian child],

---

[5] We acknowledge that the Courts of Appeal are deeply divided on how to review ICWA inquiry errors and that our Supreme Court is poised to resolve the issue. (See *In re K.H.* (2022) 84 Cal.App.5th 566, 611; *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779-782, review granted Sept. 21, 2022, S275578.) Until the court does so, we will apply this court's decision in *Benjamin M.*

whatever the outcome of the inquiry may be." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 680.)

The Department argues no prejudicial error occurred under this court's decisions in *Benjamin M.* and *Ricky R.*, because those cases involve distinguishable facts. In particular, the Department argues *Benjamin M.* and *Ricky R.* do not apply here because the ICWA inquiries the social services performed (or not) were different than the Department's here. The Department thus argues that although the relatives' responses in *Benjamin M.* and *Ricky R.* may have shed meaningful light on whether the dependent child was an Indian child, that is not true here.

In *Benjamin M.*, the social service agency could not locate the father and never asked about his Indian ancestry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 744-745.) The agency's failure to ask about his brother's Indian ancestry therefore was prejudicial because the agency effectively had no information about the father's Indian ancestry. (*Ibid.*) We thus agree with the Department that *Benjamin M.* is factually distinguishable.

However, in *Ricky R.*, both parents, like the parents here, denied any Indian ancestry. (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 676-677.) The dependent children were placed with the mother's cousin, who denied that her family had any Indian ancestry. (*Id.* at p. 677.) Without much difficulty, this court held that the Department's failure to ask the maternal grandmother, maternal aunt, and paternal grandmother whether they had Indian ancestry was prejudicial. (*Id.* at p. 680.) We noted that these family members were readily available and reasoned that their responses necessarily would "'shed

7

meaningful light on whether there is reason to believe'" that the children were Indian children. (*Ibid*.)

This is because "[i]n most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 435 [applying *Benjamin M.*].) Thus, a social services agency's failure to comply with its initial inquiry obligations under ICWA is prejudicial error "in most circumstances." (*Ibid*.)

Here, the paternal grandmother and great-grandmother were "readily available" and their responses to an ICWA inquiry would be "shed meaningful light" on whether D.B. is an Indian child, whatever they say. Thus, under *Ricky R.*, the Department's failure to ask them about their Indian ancestry was prejudicial.

The Department relies on *In re S.S.* (2022) 75 Cal.App.5th 575 and *In re J.W.* (2022) 81 Cal.App.5th 384 in support of its harmlessness argument. We decline to follow *In re J.W.* because it did not discuss or apply *Benjamin M.*, and we find *In re S.S.* unpersuasive.

In *In re S.S.*, the appellate court held the social services agency's failure to inquire into the maternal grandmother's Indian ancestry was harmless under *Benjamin M.* (*In re S.S.*, *supra*, 75 Cal.App.5th at p. 582.) The court reasoned that the maternal grandmother, mother's counsel, and S.S.'s counsel wanted S.S. placed with the maternal grandmother, yet neither she, Mother's counsel, or S.S.'s counsel suggested she had Indian ancestry.

8

(*Ibid.*)  In the court's view, their failure to do so implied that the maternal grandmother did not have Indian ancestry because they had "a strong incentive" to inform the juvenile court of the any facts suggesting that S.S. was an Indian child.  (*Ibid.*)

We find this reasoning unpersuasive for the reasons outlined in *Antonio R.* (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 435 [disagreeing with *In re S.S.*'s reasoning and application of *Benjamin M*].)  Under *Benjamin M.*'s prejudice analysis, we do not speculate about whether the extended family members might have information that suggests the child is an Indian child.  (See *ibid*.)  We instead ask whether "the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child—regardless of whether the information ultimately shows the child is or is not an Indian child."  (*Ibid.*)

The Department argues any ICWA error was harmless for the additional reason that D.B. was placed with his paternal great-uncle, and points to the recent decision from our colleagues in Division One, *Y.M.*, *supra*, 82 Cal.App.5th 901.  Applying *Benjamin M.*, our colleagues held in a case whether both parents denied any Indian ancestry that a social services agency's failure to ask the paternal grandmother and grandfather whether they had Indian ancestry was harmless for two reasons.  (*Y.M.*, *supra*, at pp. 917-918.)

First, the "Father lived with the paternal grandmother during the dependency proceedings and therefore presumably could have asked her at any time whether she knew of any possible Indian ancestry."  (*Y.M.*, *supra*, 82 Cal.App.5th at p. 917.)  Because the father "had a motive to ask, and could have easily asked" whether his mother had

9

Indian ancestry, the *Y.M.* court concluded her response an ICWA inquiry would not provide meaningful information bearing on whether the dependent child was or may be an Indian child. (*Ibid.*)

Second, "because during the dependency proceedings the paternal grandfather had sought placement of [the dependent child], he presumably would have had a strong incentive to raise any Indian ancestry in support of that goal, but he did not do so." (*Y.M.*, *supra*, 82 Cal.App.5th at pp. 917-918.) The *Y.M.* court thus concluded that the paternal grandfather was unlikely to have information that would meaningfully bear on whether the dependent child was an Indian child. (*Id.* at p. 918.)

The Department contends *Y.M.* is materially indistinguishable and urges us to follow it here. We decline to do so. The *Y.M.* court assumed that the paternal grandparents would not have meaningful information on whether their grandchild was an Indian child. The court reached that decision by speculating that the father would have asked his mother, who lived with him, whether she had Indian ancestry and by speculating that the paternal grandfather would have raised his Indian ancestry during the dependency proceedings because he wanted his dependent grandchild placed with him. (*Y.M.*, *supra*, 82 Cal.App.5th at pp. 917-918.)

This kind of "[s]peculation . . . has no place in the analysis of prejudicial error where there is an inadequate initial inquiry." (*Antonio R.*, *supra*, 76 Cal.App.5th at p. 435.) There was no indication in *Y.M.* that the father asked his mother whether she had Indian ancestry, nor was there any evidence that the paternal grandfather knew he had an

incentive to raise his Indian ancestry (if any). It is thus possible that the father and paternal grandmother in *Y.M.* did not discuss their Indian ancestry and that the paternal grandfather did not know that his Indian ancestry (if any) would have supported his goal of becoming his dependent grandchild's caregiver. We therefore disagree with *Y.M.*'s conclusion that the silence in the record about the paternal grandparents' Indian ancestry suggests that they had none. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745 ["While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother."].) Applying *Y.M. to* conclude that D.B.'s paternal grandmother and great-grandmother have no information that might bear on whether D.B. is an Indian child would require us to inappropriately speculate about their responses to a proper ICWA inquiry. (See *Antonio R.*, *supra*, 76 Cal.App.5th at p. 435.)

We also decline to follow *Y.M.* because its prejudice analysis fails to account for tribal interests. (See *Antonio R.*, *supra*, 76 Cal.App.5th at pp. 435-436; *In re Isaiah W.* (2016) 1 Cal.5th 1, 13 ["Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children"].) As a result, D.B.'s placement with his paternal great-uncle does not render the Department's ICWA error harmless, even though placement with a relative is the first placement under ICWA (25

11

U.S.C. § 1915, subd. (a)). (See *Oscar H.*, *supra*, 84 Cal.App.5th at pp. 938-939 (lead opn. of Wiley, J.).)[6]

If the Department had conducted a proper ICWA inquiry and found reason to believe ICWA applied, this "case could have followed a different path with a different outcome." (*Oscar H.*, *supra*, 84 Cal.App.5th at p. 938.) If the Department learned from the paternal grandmother or great-grandmother that D.B. might be an Indian child, then (1) the tribe could intervene in the dependency proceedings (§ 224.4; see 25 U.S.C. § 1911(c)), (2) the tribe may have a different placement preference for D.B. (see 25 U.S.C. § 1915(c)), and (3) the tribe may not have terminated parental rights. (See *Oscar H.*, *supra*, at pp. 938-939] (lead opn. of Wiley, J.).)

In short, D.B.'s placement with his paternal great-uncle does not necessarily account for tribal interests, which may have affected the outcome of this case. (*In re Oscar H.*, *supra*, 84 Cal.App.5th at pp. 938-939].) We cannot know to the certainty ICWA requires whether D.B. is or may be an Indian child until his paternal grandmother and great-grandmother are asked about their Indian ancestry. The Department's deficient inquiry fell "short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law." (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 620.) We therefore conclude the Department's failure

---

[6] *Oscar H.* is a splintered decision. Justice Wiley authored a majority opinion, which Judge Harutunian partially joined. (*Oscar H.*, *supra*, 84 Cal.App.5th at p. 940 (conc. opn. of Harutunian, J.). Judge Harutunian did not join Justice Wiley's discussion "in dicta" about why the child's placement with the maternal grandmother did not render the ICWA error harmless, which we discuss here. (*Ibid.*)

12

to inquire into their Indian ancestry was prejudicial and we must conditionally reverse the order terminating parental rights. (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 680.)

IV.

DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order the Department to comply with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). If the juvenile court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

CODRINGTON
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

13

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

## ORDER

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | E079380 |
| | (Super. Ct. No. RIJ2100014) |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, Plaintiff and Respondent, v. C.K. et al., Defendants and Appellants. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT

Requests having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on December 06, 2022, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b). The opinion filed in this matter on December 06, 2022, is certified for publication.

CERTIFIED FOR PUBLICATION

CODRINGTON
J.

We concur:


MILLER
Acting P. J.

FIELDS
J.


*Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.

1