Filed 12/24/24  In re K.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.M., Jr., a Person Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> K.M. et al., <br><br> Defendants and Appellants. | F088403 <br><br> (Super. Ct. No. JJV074456A) <br><br> **OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Sylvia J. Hanna, Judge.

Brian Bitker, under appointment by the Court of Appeal, for Defendant and Appellant K.M.

Shaylah Padgett-Weibel, under appointment by the Court of Appeal, for Defendant and Appellant E.S.

Jennifer M. Flores, County Counsel, and Marit C. Erickson, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P. J., Smith, J. and Meehan, J.

# INTRODUCTION

E.S. (Mother) and K.M. (Father) filed timely notices of appeal following the termination of their parental rights to now two-year-old K.M., Jr. under Welfare and Institutions Code section 366.26.[1]  Mother, joined by Father, claims that because the Tulare County Health and Human Services Agency (Agency) failed to conduct an adequate inquiry into whether K.M., Jr. is or may be an Indian child, in compliance with section 224.2, former subdivisions (b) and (e),[2] the juvenile court erred when it found that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA))[3] did not apply, necessitating remand.  (*Dezi C., supra*, 16 Cal.5th at p. 1125.)

The Agency concedes error with respect to its ICWA inquiry, and the parties stipulate to a conditional reversal and remand for an adequate inquiry.  (*Dezi C., supra*, 16 Cal.5th at p. 1125.)

We have reviewed the record and agree with the parties that the juvenile court erred in finding ICWA does not apply given the absence of a documented, proper, adequate and duly diligent inquiry, as mandated by California law.  (§ 224.2, subds. (b)–(c), (e); Cal. Rules of Court, rule 5.481(a)(5);[4] *Dezi C., supra*, 16 Cal.5th at p. 1125.)

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]    As addressed in part I.B. of the Discussion, section 224.2 was amended, effective September 27, 2024, by Assembly Bill No. 81.  (Assem. Bill No. 81 (2023–2024 Reg. Sess.) ch. 656 (Assembly Bill 81) [California Indian Child Welfare Act or Cal-ICWA].)  The Agency's inquiry and the juvenile court's ICWA finding in this case predated Assembly Bill 81, but, for the reasons discussed by this court in *K.H.*, *E.C.*, and *Jerry R.*, the inquiry and finding were deficient under the law as it stood prior to the passage of Assembly Bill 81.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 598–599 & 602–605 (*K.H.*); *In re E.C.* (2022) 85 Cal.App.5th 123, 141–142 (*E.C.*); *In re Jerry R.* (2023) 95 Cal.App.5th 388, 428–429 (*Jerry R.*).)

[3]    "[B]ecause ICWA uses the term 'Indian,' we [may at times] do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*), disapproved in part on another ground in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1152, fn. 18.)

[4]    All further references to rules are to the California Rules of Court.

Therefore, in accordance with the parties' stipulation, we conditionally reverse the juvenile court's order terminating Mother's and Father's parental rights and remand this matter with directions to ensure a proper, adequate and duly diligent inquiry in compliance with Cal-ICWA. (*Dezi C., supra*, p. 1125.)

## FACTUAL AND PROCEDURAL HISTORY[5]

Mother and Father are married and in an intact relationship. K.M., Jr. was born in September 2022, and an Agency social worker made contact with Mother at the hospital due to her mental health risk assessment score. Mother's support system reportedly consisted only of Father, but he worked long hours out of the area. After Mother left the hospital against medical advice, an Agency social worker made a home visit and recommended K.M., Jr. be placed into protective custody given the limited baby supplies; lack of a support system; and Mother's concerning physical appearance, failure to take her prescribed medication, agitation, refusal of all services, and prior dependency case history involving her infliction of physical injury on K.M. Jr.'s half-sibling, which had resulted in placement in a legal guardianship. K.M., Jr. was subsequently taken into protective custody via warrant, and the Agency filed a petition under section 300, subdivision (b)(1) (failure to protect based on untreated mental illness) and (j) (abuse of sibling).[6]

During initial contact at the hospital, Mother and Father denied Native American ancestry. Mother subsequently refused to sign a Judicial Council form ICWA-020. An Agency social worker completed a Judicial Council form ICWA-010(A) stating that Mother and Father gave no reason to believe that K.M., Jr. is or may be an Indian child.

---

[5] We include only a limited factual summary given that the sole issue on appeal is Mother's and Father's ICWA claim.

[6] Effective January 1, 2023, failure to protect based on mental illness was renumbered to section 300, subdivision (b)(1)(D). (Sen. Bill No. 1085 (2021–2022 Reg. Sess.) ch. 832.)

Based on Mother's and Father's responses, the Agency's detention report stated ICWA did not apply.

At the detention hearing held in September 2022, Mother stated she was not aware of any Native American ancestry for her or for Father, who was not present. The juvenile court found insufficient reason to believe ICWA may apply, found a prima facie showing had been made that K.M., Jr. was a person described by section 300, and ordered him detained from Mother and Father and placed in the temporary custody of the Agency.

In October 2022, at the continued detention hearing, Mother reiterated she had no Native American ancestry, but Father stated his late father was Cherokee. Father stated paternal grandfather was not a registered member of the tribe, he was not aware of any relatives who were, and he was not in contact with paternal grandfather's family. However, he thought he might be eligible for tribal membership. The juvenile court found Father to be the presumed father of K.M., Jr., found insufficient reason to believe K.M., Jr. is or may be an Indian child, found a prima facie showing had been made that K.M., Jr. was a person described by section 300, and ordered him detained from Mother and Father and placed in the temporary custody of the Agency.

In November 2022, the Agency documented that it sent ICWA-030 notices to the Bureau of Indian Affairs, the Eastern Band of Cherokee Indians, the Cherokee Nation, and the United Keetowah Band/Cherokee Indians of Oklahoma. The only family information included was paternal grandfather's name and date of birth.

Several days later, the juvenile court held the jurisdiction hearing and sustained the section 300, subdivisions (b)(1) and (j) petition allegations against Mother. At the disposition hearing in December 2022, the court adjudged K.M., Jr. a dependent; found by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of K.M., Jr. if returned home; and found there were no reasonable means by which his physical health could be protected without removing him from Mother's and Father's physical custody.

The court ordered family reunification services and again found insufficient reason to believe K.M., Jr. is or may be an Indian child.

In February 2023, the Eastern Band of Cherokee Indians and the Cherokee Nation sent responses that K.M., Jr. was not a member or eligible for membership. In March 2023, the Seminole Tribe of Florida and the Seminole Nation of Oklahoma sent responses that K.M., Jr. was not a member or eligible for membership.

At the six-month review hearing held in July 2023, Mother claimed Cherokee ancestry on her father's side. The juvenile court ordered family reunification services for six months.

Mother subsequently informed the Agency social worker that she had Native American ancestry in the Oklahoma Seminole tribe through her father and her paternal grandmother. She also claimed Seminole Cherokee ancestry through her paternal great-great-great-grandmother.

In August and September 2023, the Eastern Band of Cherokee Indians, the Cherokee Nation, the Seminole Tribe of Florida, and the Seminole Nation of Oklahoma sent responses that K.M., Jr. was not a member or eligible for membership.

At the 12-month review hearing in October 2023, the juvenile court continued reunification services for six months.

In April 2024, at the 18-month review hearing, the court terminated family reunification services, set a section 366.26 hearing, and made a finding that ICWA does not apply.

In July 2024, the juvenile court denied Mother's section 388 request to change a court order, found K.M., Jr. was adoptable and the parental-benefit exception did not apply, terminated Mother's and Father's parental rights, and set adoption as K.M. Jr.'s permanent plan. (§ 366.26.)

Mother and Father appealed.

**DISCUSSION**

## I. Legal Principles

### A. ICWA

"ICWA was enacted in 1978 by Congress 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 92 Stat. 3069, 25 U.S.C. §1901(4). Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." §§1901(4), (5). This harmed not only Indian parents and children, but also Indian tribes. As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." §1901(3).' (*Haaland v. Brackeen* (2023) 599 U.S. ___ [143 S.Ct. 1609, 1623] (*Haaland*); accord, *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32–36 (*Holyfield*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)

"'[ICWA] thus aims to keep Indian children connected to Indian families. "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." §1903(4). If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. §1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. §1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not

6.

consent) or "voluntary" (one to which they do).' (*Haaland, supra*, 599 U.S. at p. ___ [143 S.Ct. at p. 1623]; accord, *Holyfield, supra*, 490 U.S. at p. 36.)

"ICWA sets the minimum standards, providing, 'In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.' (25 U.S.C. § 1921; accord, Welf. & Inst. Code, § 224, subd. (d).) 'The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved."' (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) 'ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. § 1903(4).) 'Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. §§ 1911(a), (c), 1912(a).)

"To facilitate notice in appropriate cases, federal law provides, 'State courts must ask each participant in an emergency or voluntary or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2023).) California law requires more and, relevant to the issue raised here, imposes on counties a broad duty of inquiry into whether a child placed in the temporary custody of the county is or may be an Indian child. (§ 224.2, subd. (b).)" (*Jerry R., supra*, 95 Cal.App.5th at pp. 407–409, fn. omitted.)

## B. Cal-ICWA

"In 2006, 'persistent noncompliance with ICWA led [our state] Legislature … to "incorporate[] ICWA's requirements into California statutory law."'" (*Jerry R., supra*, 95 Cal.App.5th at p. 409, quoting *In re Abbigail A.* (2016) 1 Cal.5th 83, 91.) "''In 2016, new federal regulations were adopted concerning ICWA compliance''" (*Jerry R., supra*, at p. 409, quoting *K.H., supra*, 84 Cal.App.5th at p. 595), but "[p]rior to that time, 'neither ICWA itself nor the implementing federal regulations in effect … imposed a duty on courts or child protective agencies to inquire whether a child involved in a dependency proceeding was an Indian child'" (*Jerry R., supra*, at p. 410, quoting *In re T.G.* (2020) 58 Cal.App.5th 275, 289 (*T.G.*).) Now, "'[f]ederal regulations governing ICWA … now require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that "may culminate" in foster care placement or termination of parental rights.'" (*Jerry R., supra*, at p. 410, quoting *In re Rylei S.* (2022) 81 Cal.App.5th 309, 323, fn. 11.)

"Subsequently, the California Legislature enacted Assembly Bill No. 3176,[7] effective January 1, 2019, which '"made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements."'" (*Jerry R., supra*, 95 Cal.App.5th at p. 410, quoting *K.H., supra*, 84 Cal.App.5th at p. 595.) "Assembly Bill 3176 repealed former sections 224.2, pertaining to notice, and 224.3, pertaining to inquiry, and reenacted them in different form. (Stats. 2018, ch. 833, §§ 4–7.) Section 224.3 now governs notice and section 224.2 inquiry." (*Jerry R., supra*, at p. 410, fn. omitted.) The legislation "revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, 'revise[d] the specific steps a social worker, probation officer, or court is

---

**7** "Assembly Bill No. 3176 (2017–2018 Reg. Sess.) (Assembly Bill 3176)." (*Jerry R., supra*, 95 Cal.App.5th at p. 410, fn. 11.)

required to take in making an inquiry of a child's possible status as an Indian child.'" (*Id.* at p. 411, quoting Legis. Counsel's Dig., Assem. Bill 3176, Stats. 2018, ch. 833, p. 1.)

Very recently, faced with continuing difficulties and inconsistencies in this area of the law, the Legislature enacted Assembly Bill 81, effective September 27, 2024.[8] Assembly Bill 81 "create[d] a comprehensive act to protect and preserve Indian families in California and to aid in improving implementation of applicable state and federal laws." (§ 224, subd. (c).) The legislation expressly recognized, "Despite the passage of the federal Indian Child Welfare Act of 1978, Senate Bill 678 (Stats. 2006, Ch. 838), and Assembly Bill 3176 (Stats. 2018, Ch. 833), California continues to experience inconsistent implementation of the Indian Child Welfare Act and its related state law protections, thus continuing the harm and breakup of Indian families. Variation in practice undermines tribal sovereignty, furthers destructive impacts on tribes and tribal communities, puts the lives of Indian children and families at disproportionate risk for multiple adverse outcomes, and fails to address systemic racism." (*Id.*, subd. (b).) In addition to advancing the goals of clarity and consistency under California law (*id.*, subd. (c)), Cal-ICWA resolved the split of appellate authority over whether or not the duty of initial inquiry under section 224.2, former subdivision (b), arises when a child is taken into protective custody by warrant under section 340, expressly providing that it does (§ 224.2, subd. (b)(2)). (See *Jerry R., supra*, 95 Cal.App.5th at pp. 403–404 [addressing *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743 & *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted Sept. 27, 2023, S281447, & agreeing with *Delila D.* that the duty of initial inquiry applies regardless of how the child is taken into custody].)

---

[8] The amendments to section 224.2 between Assembly Bill No. 3176 (2017–2018 Reg. Sess.) and Assembly Bill 81 did not affect subdivision (b). (*Jerry R., supra*, 95 Cal.App.5th at pp. 410–411, fn. 12 [Assem. Bill No. 686 (2019–2020 Reg. Sess.), eff. Jan. 1, 2020; Assem. Bill No. 2944 (2019–2020 Reg. Sess.), eff. Sept. 18, 2020; & Assem. Bill No. 2960 (2021–2022 Reg. Sess.), eff. Jan. 1, 2023].)

As amended, section 224.2 provides, in relevant part, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300, 601, or 602 may be or has been filed, is or may be an Indian child." (*Id.*, subd. (a).) "The duty to inquire begins for a county when first contacted regarding a child, including, but not limited to, asking a party reporting child abuse or neglect whether the party has any information that the child may be an Indian child, and upon a county department's first contact with the child or the child's family, including extended family members as defined in paragraph (1) of subdivision (c) of Section 224.1. At the first contact with the child and each family member, including extended family members, the county welfare department or county probation department has a duty to inquire whether that child is or may be an Indian child." (*Id.*, subd. (b)(1).)

"If a child is placed into the temporary custody of a county probation department pursuant to Section 307, or received and maintained in temporary custody of a county welfare department pursuant to paragraph (1) of subdivision (a) of Section 306, or taken into or maintained in the temporary custody of a county welfare department pursuant to paragraph (2) of subdivision (a) of Section 306, or if they were initially taken into protective custody pursuant to a warrant described in Section 340, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b)(2).)

"For a court presiding over any juvenile proceeding that could result in placement of an Indian child with someone other than a parent or Indian custodian, including proceedings where the parents or Indian custodian have voluntarily consented to

10.

placement of the child, the duty to inquire begins at the first hearing on a petition. At the commencement of the hearing, the court shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child, whether they know or have reason to know that the child is an Indian child, and where the child, the parents, or Indian custodian are domiciled, as defined in Section 224.1. Inquiry shall also be made at the first appearance in court of each party or interested person who was not present at the first hearing on the petition. The inquiry and responses shall occur on the record. The court shall instruct the parties and persons present to inform the court if they subsequently receive information that provides reason to know the child is, or may be, an Indian child." (§ 224.2, subd. (c).)

Relevant in this case, "reason to believe that an Indian child is involved" triggers the duty of further inquiry. (§ 224.2, subd. (e).)[9] "[R]eason to believe" exists whenever the court or the agency has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility. (*Id.*, subd. (e)(2)(A)–(C).)

"'The duty to provide notice arises only if [the agency] or the court "knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a); see [Welf. & Inst. Code,] § 224.3, subd. (a); [*In re*] *Austin J.* [(2020)] 47 Cal.App.5th [870,] 883–884[, disapproved on another ground by *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18].) Federal

---

[9]    Assembly Bill 81 effected only minor technical changes to subdivision (e) of section 224.2.

regulations define the grounds for reason to know that an Indian child is involved. (25 C.F.R. § 23.107(c)(1)–(6) (2022).) State law conforms to that definition. (§ 224.2, subd. (d)(1)–(6).)' ([*In re*] *Ricky R.* [(2022)] 82 Cal.App.5th [671,] 678–679[, disapproved on another ground by *Dezi C., supra*, at p. 1152, fn. 18].)" (*E.C., supra*, 85 Cal.App.5th at p. 141.)

## II.    Standard of Review

"'The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, "subject to reversal based on sufficiency of the evidence."' (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (*i*)(2); accord, *E.C., supra*, 85 Cal.App.5th at p. 142; *Adoption of M.R.* (2002) 84 Cal.App.5th 537, 542; rule 5.482(c).)[10] First, '[t]he court must find there is "no reason to know whether the child is an Indian child," which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply.' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (*i*)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).) Second, '[t]he juvenile court must … find a "proper and adequate further inquiry and due diligence …."' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (*i*)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).)

"The juvenile court's finding on the second element 'requires the … court to "engage in a delicate balancing of" various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence.' (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C., supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of

---

[10]     Assembly Bill 81 effected only minor technical changes to subdivision (*i*) of section 224.2.

discretion.  (*K.H., supra*, at p. 589; accord, E*.C., supra*, at p. 143; *In re Ezequiel G., supra*, at p. 1003.)"  (*Jerry R., supra*, 95 Cal.App.5th at p. 427.)

**III.    Analysis**

**A.    Error**

""Notice to Indian tribes is central to effectuating ICWA's purpose …."  (*In re T.G.* (2020) 58 Cal.App.5th 275, 288 (*T.G.*), citing *Isaiah W., supra*, [1 Cal.5th] at p. 8.)  However, it is typically "not self-evident whether a child is an Indian child" (*Benjamin M., supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G., supra*, at p. 294).  To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a))' [citation] …."  (*Jerry R., supra*, 95 Cal.App.5th at p. 411, quoting *K.H., supra*, 84 Cal.App.5th at p. 588.)  Under California law, agencies have a broad duty of inquiry and documentation. (*Jerry R., supra*, p. 411, citing *K.H., supra*, at p. 588, § 224.2, subd. (b) & rule 5.481(a)(5).)

"[C]omplying with the duty of inquiry and documentation under ICWA is unlikely to 'prove onerous' in most cases [citation], [but] in no event may we interpret the law to relieve the court or the agency of complying with the plain directives imposed by statute and rule (*K.H., supra*, [84 Cal.App.5th] at p. 620; see § 224.2; rules 5.480–5.482).  There may be cases in which there is no one else to ask beyond [one or both] parents [and a few relatives], but, if that is so, the record must be developed to reflect that fact and supported by documentation.  (Rule 5.481(a)(5).)  Properly developed and documented, 'the court has relatively broad discretion to determine [that] the … inquiry was proper, adequate, and duly diligent on the specific facts of the case.'  (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)"  (*Jerry R., supra*, 95 Cal.App.5th at p. 428.)

As previously summarized, Father claimed Cherokee ancestry through his late father and Mother subsequently claimed Oklahoma Seminole ancestry through her father and her paternal grandmother, and Seminole Cherokee ancestry through her paternal great-great-great-grandmother. In responses to two sets of ICWA-030 notices, the Eastern Band of Cherokee Indians, the Cherokee Nation, the Seminole Tribe of Florida, and the Seminole Nation of Oklahoma sent responses stating that K.M., Jr. was not a member or eligible for membership.

Mother argues that the record contains no documentation of an inquiry of anyone other than Mother and Father, even though maternal grandmother attended the continued detention hearing. (§ 224.2, subd. (b).) She also argues that her claim and Father's claim of Native American ancestry provided a reason to believe that K.M., Jr. may be an Indian child, triggering the duty of further inquiry. (*Ibid.*) Instead of conducting an adequate inquiry, the Agency unnecessarily sent ICWA-030 notices that failed to set forth sufficient information to afford the tribes a chance to conduct a meaningful review.[11] Mother asserts that without an inquiry sufficient to gather, or attempt to gather, relevant information, the first set of ICWA-030 notices were insufficient and there is no record of the second set of ICWA-030 notices.

Given the information about possible Native American ancestry relayed by both Mother and Father, the Agency had a duty of further inquiry under section 224.2, subdivision (e). (*E.C., supra*, 85 Cal.App.5th at p. 155.) However, there is no documentation that anyone other than Mother and Father was asked about possible Native American ancestry even though maternal grandmother attended the continued detention hearing and they were living with her, and there is no documentation concerning whether there are any other family members or interested parties available to ask. (§ 224, subds. (b), (e).) This fell well short of the inquiry required under both

---

[11] The notices sent in July 2023 are not part of the record.

subdivision (b) and subdivision (e) of section 224.2. Although the Agency sent ICWA-030 notices based on Mother's and Father's claims of Native American ancestry, the first set included only paternal grandfather's name and date of birth, giving the tribes contacted almost no information on which to proceed, and the second set is not part of the record. (See § 224.2, subd. (d).) On this undeveloped record, the Agency's very limited inquiry is insufficient under the law, as it concedes. (§ 224.2, subds. (b), (e); rule 5.481(a).)

"'General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved. [Citation.] Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's "affirmative and continuing duty to inquire" to construe broadly the duty to make further inquiry.'" (*E.C., supra*, 85 Cal.App.5th at p. 147, quoting *T.G., supra*, 58 Cal.App.5th at p. 295.)

## B. Remedy

"ICWA and Cal-ICWA are unique statutory schemes that are intended to protect Native American heritage, cultural connections between tribes and children of Native American ancestry, the best interests of Indian children, and the stability and security of Indian tribes and families." (*Dezi C., supra*, 16 Cal.5th at p. 1125, citing *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8; 25 U.S.C. § 1902; & Welf. & Inst. Code, § 224, former subd. (a).) As previously stated, "'Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'" (*Dezi C., supra*, at p. 1133, quoting *T.G., supra*, 58 Cal.App.5th at p. 288.) "'Although the duty of inquiry is a continuing one [citation], as we have seen in countless cases, … if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in

the proceeding declines precipitously.'" (*Dezi C., supra*, 16 Cal.5th at p. 1140, quoting *K.H., supra*, 84 Cal.App.5th at p. 609.)

Therefore, "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3. When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial. [Citations.] '[U]ntil an agency conducts a proper initial inquiry and makes that information known, it is impossible to know what the inquiry might reveal.'" (*Dezi C., supra*, 16 Cal.5th at p. 1136, quoting *K.H., supra*, 84 Cal.App.5th at p. 617.)[12]

On remand, "'the juvenile court [must] direct the [Agency] to conduct a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).'" (*E.C., supra*, 85 Cal.App.5th at p. 157, quoting *K.H., supra*, 84 Cal.App.5th at p. 621; accord, *Jerry R., supra*, 95 Cal.App.5th at p. 431.) "'So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and [Cal-ICWA], the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (*i*)(2).)'" (*E.C., supra*, at p. 157, quoting *K.H., supra*, at p. 621; accord, *Jerry R., supra*, at p. 431.)

**DISPOSITION**

The juvenile court's order terminating Mother's and Father's parental rights is conditionally reversed, and the matter is remanded to the court for the limited purpose of

---

[12]  This case, like *Dezi C.* and our decisions in *K.H.*, *E.C.*, and *Jerry R.*, involves a patently insufficient inquiry. (*Dezi C., supra*, 16 Cal.5th at p. 1141; *K.H., supra*, 84 Cal.App.5th at p. 620; *E.C., supra*, 85 Cal.App.5th at pp. 147–148; *Jerry, R., supra*, 95 Cal.App.5th at pp. 427–429.)

ensuring compliance with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481.  If, after determining that a proper, adequate and duly diligent inquiry was made, the court concludes that ICWA does not apply, the court shall reinstate its order terminating Mother's and Father's parental rights.  If, instead, the court concludes that ICWA applies, the court shall proceed in conformity with ICWA and Cal-ICWA.